**In re Simon BANKS, Respondent.**

**No. 87–97.**

District of Columbia Court of Appeals.

Nov. 23, 1987.

Publication Ordered March 21, 1989.
Rehearing En Banc Denied
Sub Nom April 21, 1989.

## MEMORANDUM OPINION

GALLAGHER, Senior Judge.

This court's Committee on Unauthorized Practice of Law ("petitioner" or "Committee") filed a petition pursuant to D.C.App. R. 49(d) from an order to show cause why respondent, Simon Banks, should not be held in contempt for, and/or permanently enjoined from, violating D.C.App.R. 49(b) concerning the unauthorized practice of law.[1] However, the Committee later withdrew its request for contempt, fine, and imprisonment on April 13, 1987.[2] Thus, the court has before it only the Committee's remaining requests for equitable relief in the form of (1) injunctive relief, (2) an accounting by respondent of all fees received, (3) restitution of all fees received, and (4) "notice by respondent, both by advertisement in the *Washington Post Magazine* and by letter to all clients that he is not a lawyer and is not authorized to provide any legal services." The undersigned was assigned to conduct this proceeding.

The filing of the petition which initiated these proceedings was prompted by complaints received by the Committee in 1984 and 1985 concerning respondent. In response to those complaints, the Committee members met with respondent to discuss the matter and the terms of a possible settlement agreement. On September 12, 1985, the Committee and respondent entered into a settlement agreement. In its petition, the Committee alleges that respon-

---

1. It is a function of this court to encourage public confidence in the law and the legal profession. In discharging this duty, the court has a Committee on Admissions to assure that those seeking admission to practice in this jurisdiction meet certain minimum requirements as to competence and moral character; a Committee on Professional Responsibility to assure that persons admitted to the practice continue to measure up to those standards; and a Committee on Unauthorized Practice to assure that those not measuring up to such requirements are not permitted nevertheless to assume the mantle of the profession. This latter Committee instituted this proceeding.

2. *See* Committee's Response to Court's April 3, 1987, Request for Committee's Position Regarding Procedure, at 2.

dent violated the 1985 settlement agreement,[3] as well as our Rule 49(b).

On April 22, 1987, respondent filed a motion for partial summary judgment in response to which the Committee, on April 30, 1987, filed an opposition and a cross-motion for summary judgment. Argument on these motions was heard on May 12, 1987, and the court, in a Memorandum Opinion and Judgment filed May 26, 1987, denied respondent's motion for partial summary judgment and petitioner's cross-motion for summary judgment. It issued a temporary restraining order pursuant to Super.Ct.Civ. R. 65(b) restraining respondent from (1) practicing law in the District of Columbia, and (2) giving the public the impression that he is authorized to practice law in the District of Columbia, in violation of D.C. App.R. 49(b).[4]

At the commencement of the evidentiary hearing, respondent asserted that the court no longer had jurisdiction over the matter because he had just filed a removal petition in the United States District Court. After hearing argument on whether the hearing should be stayed, the court adjourned the hearing pending notice in relation to the petition for removal to the District Court.

The United States District Court entered an order, dated June 15, 1987, dismissing the removal proceeding. The evidentiary hearing resumed on June 24, 1987, and continued on June 25 and July 7, 1987.[5]

Upon consideration of the pleadings filed, the testimony elicited at the hearing, the documentary evidence, and the various memoranda of law filed in this proceeding, the court makes findings of fact and conclusions of law.

## SUMMARY OF EVIDENCE

1. It is undisputed that respondent, a 1975 law school graduate, is not and never has been a member of the Bar of the District of Columbia, or any other bar.

2. It is also undisputed that respondent held the position of hearing examiner at the District of Columbia Office of Human Rights from 1975–1976 and later at the District of Columbia Rental Accommodation Office.

3. From September of 1986 through April of 1987, respondent advertised in the weekly *Washington Post Magazine*. The advertisement reads as follows:

---

**3.** The settlement agreement provided in pertinent part that:

1. Banks will ensure that all business cards, stationery and advertising materials bearing his name comply with the following requirements: (a) Such materials shall *not*

   (1) use the term "Esq." or "Esquire," or the term "Professional Association," "Professional Corporation," or any abbreviation thereof.

   (2) bear the likeness of the scales of justice or any similar design connoting the legal profession.

   (3) contain an "M.B.O.C. Certification No." or other entry deceptively similar to a bar number.

   (4) contain the words "former administrative law judge" or "former in-house counsel" or other words suggestive of membership in the legal profession.

(b) Such materials may contain the words "former hearing examiner," provided that they also contain the words "not admitted to the practice of law."

2. All listing in building directories, on office doors, etc. shall conform to paragraph 1.

3. Banks and the Committee acknowledge that this Agreement does not deal with the question of whether Banks' representation of persons before certain agencies of the District of Columbia

government contravenes Rule 49. The Committee reserves the right to pursue this issue in the future. If Banks continues to provide representation before such agencies, Banks shall communicate in writing at the outset of all relationships with prospective clients or clients that he is not licensed to practice law. Banks shall not represent to prospective clients, clients, adversaries of his clients, or any other person that he is an attorney.

4. Banks will not prepare for another person, for Banks' own signature or for any client's signature *pro se,* any complaint, motion or other pleading for filing in any court located in the District of Columbia.

5. Banks will not prepare any contract, deed, mortgage, discharge, lease, trust instrument, will or other instrument for any person or prepare any legal opinion, or otherwise engage in the practice of law as defined in Rule 49.

**4.** By its terms, the temporary restraining order expired on June 4, 1987. No request for an extension was made by the Committee.

**5.** In addition to the motions outlined above, respondent filed some ten other motions in this proceeding between April 22, 1987, and June 23, 1987.

## JOB PROTECTORS

### VICTIMS OF JOB DISCRIMINATION

On account of race, sex, handicapped status, promotion, demotion, rif'ed, harassment, unemployment compensation. For representation by former hearing examiners also *known as administrative law judges* call: (202) 863–2292, 24 hours. (Emphasis added.)

From September through October of 1986, the advertisement appeared in the *Washington Post* under the heading of "Legal Services." In October, 1986, respondent requested that the advertisement be placed under the heading of "Unique Services." This change became effective in November of 1986, and the advertisement continued to run under "Unique Services" through April of 1987. The only other changes were the size of the advertisement, which increased from one inch to two inches, and then to three inches.

In addition, the *Washington Post* ran a promotional piece concerning the success of respondent's advertising campaign in the *Washington Post Magazine* in January of 1987, stating that "Job Protectors" is a "legal service," indicating that the *Washington Post* had concluded from its dealings with respondent that he was a practicing lawyer.

4. Respondent advertised Job Protectors over a local radio station, WHUR–FM, from February 24 to March 11, 1987. The text of the advertisement recorded by respondent reads as follows:

> Hello. My name is Simon Banks, Chief Executive Officer of Job Protectors and a former chief hearing examiner. Have you been a victim of job discrimination or been treated differently than employees of other races, sex and handicap status? Has your employer harassed you or discriminated against you with respect to a promotion, seniority, penalty, workman's compensation or employment benefits? If so call Job Protectors at 543–7870. Job Protectors is a consulting firm that provides representation by former hearing examiners that are experienced in employment discrimination matters. If you are a victim of wrongful termination and require representation before the Equal Employment Opportunity Commission, the Office of Employee Appeals, the Merit System Protection Board and any grievance hearing or administrative appeal call Job Protectors at 543–7870. Job Protectors can protect your employment rights. Call 543–7870. That's Job Protectors, 543–7870.

5. Respondent advertised Job Protectors in the May 1987–88 edition of the *Washington Metropolitan Yellow Pages* under "Employment Agencies." The advertisement reads as follows:

### JOB PROTECTORS

#### Victims of Job Discrimination

On Account of Race, Sex, Handicapped Status, Promotion, Demotion, Rif'ed, Harassment, Unemployment & Workman's Compensation.

Representation by former Hearing Examiners

#### *Administrative Law Judges*

Washington DC . . . . . . . . . . . . . . . . . 543–7870

24 Hours . . . . . . . . . . . . . . . . . . . . . . . 863–2292

(Emphasis added.)

6. Respondent regularly distributes business cards that read as follows:

SIMON BANKS, J.D.     (202) 863–2292

*Adm. Trial Advocate*     (202) 543–7870

### JOB PROTECTORS

\* Hearing Examiners, Lobbyists, Mediators \*

Consultant Representation at: EEOC, Human Rights, MSPB, OEA, SBA, DOL, Rent Control Grievance Proceedings, Unemployment Comp., U.S. Congress, Minority Business Lobbyist

One Washington Square Bldg., P.O. Box 65486

Washington, D.C. 20035.

(Emphasis added.)

7. Respondent's witnesses testified that he distributed a firm resume which reads as follows:

This is to acquaint you with Job Protectors and inform you of the services we provide.

Job Protectors consist of former Hearing Examiners and EEO officers before whom law firms have represented their respective employer/employee clients in connection with claims of discrimination, harassment, et cetera. Hearing Examiners have also been known as *Administrative Law Judges.*

Each of our former Hearing Examiners, [*advocate-representatives*] *possess law degrees* and are skilled and experienced in representing aggrieved employees before EEOC, Offices of Civil Rights; MSPB, grievance proceedings and adverse action matters.

Please feel free, to recommend to us any past or present employee who feels he/she has been treated unfairly and/or in a disparate manner.

Our card is enclosed for your reference. Also, the enclosed circular may be posted at your discretion.

We maintain strict confidentiality in connection with all matters.

Further, we also represent aggrieved employees at unemployment compensation appeal hearings.

(Emphasis added.)

8. Petitioner and Respondent presented evidence that Respondent used letterhead stationery which described Job Protectors as: *administrative hearing advocates;* hearing examiners; *advocates;* mediators; arbitrators; lobbyists; and personal consultants who have been consultant representatives at: EEOC; Human Rights; MSPB; OEA; SBA–Rent Control; grievance proceedings; unemployment compensation; United States Congress; and Minority Business Lobbyist. (Emphasis added.)

9. Petitioner presented evidence that respondent distributed to potential clients a copy of a *Washington Post* newspaper article identifying him as an "attorney," and a letter introducing Job Protectors and identifying them as "administrative law judges."

10. Petitioner and respondent presented evidence that respondent regularly presented to clients for their perusal and signature a disclosure statement, which reads as follows:

## DISCLOSURE OF REPRESENTATIVE CAPACITY

I, -------------------, hereby acknowledge that I have been advised that Job Protectors/Administrative Hearing Advocates is not a law firm and is not licensed to practice law.

I further acknowledge that I have *been advised that Simon Banks, Juris Doctor, is not licensed to practice law, and that Simon Banks is a former chief Hearing Examiner* authorized to hear, preside over and decide employment discrimination cases, grievance hearings, and rent control cases.

I have been further advised that from 1975, Simon Banks, J.D., has been authorized to convene and conduct trial-type hearings over [EEO] employment cases as chief hearing examiner, before whom attorneys and major law firms have represented litigants, tried, and argued cases on behalf of their respective clients in matters involving discrimination in employment, on account of age, race, sex, sexual harrassment, handicapped status, seniority, housing, public accommodations, retaliation, promotion, evaluation, housing, and metriculation.

I further acknowledge that I have been advised that Simon Banks, J.D. was also appointed Chief (Hearing Examiner) of Eviction Adjudication, in 1978 to hear and decide issues and cases in connection with D.C. Rent Control Law.

I have been advised that Simon Banks, J.D. became a member of the *National District Attorneys Association* in 1973 and that in 1975 Simon Banks was appointed a Founding Member of the *World Association of Lawyers.* That Simon Banks received honors from the

National Association of Black Manufacturers, Blacks in Government and the World Conference of Mayors, and the District of Columbia Government, et cetera, for his services.

I am further advised, that Job Protectors/Administrative Hearing *Advocates,* is authorized to represent me before The Equal Employment Opportunity Commission, The Office of Human Rights, the D.C. Office of Employee Appeals, and the Merit System Protection Board, and in any of the various state EEOC Office and Commissions, as a consultant representative.

DATE ---------------

------------------

(Emphasis added.)

11. Petitioner presented evidence that respondent has represented persons other than himself before federal and District of Columbia administrative agencies, including: the Equal Employment Opportunity Commission ("EEOC"); the United States Merit Systems Protection Board ("MSPB"); and the District of Columbia Office of Human Rights.

12. Three witnesses for respondent who are members of the lay public untutored in the law and whom respondent represented before federal or District of Columbia administrative agencies, testified that they received, read and signed the disclosure statement, *supra,* paragraph 10. They also testified that as a result of the disclosure statement, they knew that in employing respondent they were not thereby employing a licensed member of the District of Columbia Bar.

13. Several witnesses for petitioner who are members of the lay public untutored in the law and whom respondent represented before federal or District of Columbia administrative agencies, testified that their initial contacts with respondent regarding their employment problems were prompted by his advertisments in the *Washington Post* or on the radio. Each initially met with respondent assuming, from the nature of the services offered and the references to his qualifications in the advertisements, that he was a lawyer licensed to practice.

Not only did he fail to dispel their misimpressions that he was qualified to practice law, but he encouraged the misimpressions by means of the firm resume, business cards, and verbal and written descriptions of his qualifications as demonstrated by his employment history and past and present organizational memberships. These witnesses acknowledged their ignorance of exactly what qualifies one to be an attorney entitled to practice law in the District of Columbia. Additionally, all but one admitted that the Disclosure of Representative Capacity forms presented by respondent bore their signatures, but either did not remember ever seeing or signing the statement, were confused by its content which did not convey to them that respondent was not qualified to practice law in the District of Columbia, or were not given the statements until after respondent had filed their respective complaints.

14. Dorothy Evans and Barbara Beverly, former receptionists for respondent, testified that he instructed them not to volunteer that he was not an attorney licensed to practice law in the District of Columbia, and if directly asked whether respondent was a lawyer or if Job Protectors was a law firm, to state that all members of the firm had law degrees and were former administrative hearing judges and that Job Protectors was a consulting firm. Beverly testified that when she was directly asked whether respondent was admitted to practice law in the District of Columbia, she would tell the truth.

15. Petitioner presented evidence that respondent represented to prospective clients: that he could handle cases in a court of law all the way to the Supreme Court; that he had never lost a case; that Job Protectors was his firm with a number of coworkers; that he had represented such people as John Erlichman and Jim Brown; that he had worked on the Watergate team; and that he was a former hearing examiner, also known as an administrative law judge, an administrative trial advocate, an in-house counsel, a founding member of the World Council (or Association) of

Lawyers, and a member of the National District Attorneys Association.

16. On at least two occasions in May of 1987, in connection with his representation of Paul Slappy, respondent failed to state that he was not an attorney when it was obvious that others were under the impression that he was an attorney, and in one instance, by failing to do so, fostered the false impression that he was licensed to practice law in another jurisdiction.

17. A witness for respondent testified that the titles "administrative law judge" and "hearing examiner" are used synonymously and interchangeably at the Rental Accommodations Office in reference to hearing examiners.

## FINDINGS OF FACT

Based on the evidence presented and the opportunity to observe the witnesses and evaluate their testimony, the court makes the following findings of fact:

1. From September of 1985 until the date of the hearing in this case, respondent, who is not now and never has been an active member of the District of Columbia Bar, has engaged in a continuous course of conduct designed to create the public and individual misimpression that he has been duly qualified to practice law in the District of Columbia. Such misimpression has been generated and fostered by respondent through various media, including advertisements in the yellow pages, newspapers, and on the radio, and representations made in resumes, business cards, stationery, and other verbal and written descriptions of his business.

2. The general public, as represented by the several witnesses who testified in this matter, was reasonably led by respondent's conduct to erroneously believe that respondent was in fact a licensed member of the District of Columbia Bar. The general public does not understand that in order to practice law in the District of Columbia, one must not only graduate from law school, but also pass a bar examination and be certified as morally fit to be a member of the Bar. The public assumes that if one offers "legal services" in the manner that respondent did, one must necessarily be an attorney. Moreover, the public is likely to assume that one must be an attorney prior to attaining such positions as "hearing examiner," "administrative law judge," "administrative trial advocate," "consultant representative," "in-house counsel," "member of the World Association of Lawyers," and "member of the National District Attorneys Association."

3. Respondent further encouraged the false impression that he is a licensed member of the District of Columbia Bar by failing to disclose his status with respect to Bar membership to prospective and actual clients. The evidence demonstrated several situations in which respondent intentially failed to inform interested persons that he is not in fact an attorney. Moreover, respondent's "disclosure statement," as a practical matter, did not actually alert most of his clients that he was not licensed to practice law in the District of Columbia. Several witnesses testified that they either did not remember signing the disclosure statement in question, or did not know what the disclosure statement was. Thus, to the extent that the disclosure statement was intended to clarify and disclose respondent's position with respect to the licensed practice of law, it did not have its intended effect.

## LEGAL DISCUSSION

1. At the onset of this proceeding, it was established that the only issue before the court was whether respondent had held himself out to the public as being a qualified member of the District of Columbia Bar by creating, or fostering, the illusion that he is licensed to practice law in the District of Columbia. The Unauthorized Practice Committee recognized that the question of whether respondent's actual representation of persons in federal administrative proceedings was a violation of Rule 49(b) was not before the court. *See* D.C.App.R. 49(c)(4). The Committee also acknowledged that the court did not have before it the question of whether respondent's actual representation of persons before District of Columbia administrative

agencies which permit non-attorney representation is a violation of Rule 49(b).[6] Nor does the court address in this proceeding the issue of whether representation by a non-attorney before District of Columbia administrative agencies whose published rules do *not* permit such representation is a violation of Rule 49(b).[7]

2. Violations of District of Columbia Court of Appeals Rule 49(b) constitute the unauthorized practice of law and are subject to injunctive relief. *See* D.C.App.R. 49(d). The rule provides, in pertinent part:

(b) Practice of law in the District of Columbia.

(1) No person shall regularly engage in the practice of law in the District of Columbia or in any manner hold out as authorized or qualified to practice law in the District of Columbia unless enrolled as an active member of the Bar.

(2) No person, firm, association, bank or corporation shall, in the District of Columbia, advise or counsel any person on matters affecting legal rights, or practice or appear as an attorney at law for a person other than such person in any court, or furnish an attorney or attorneys to render legal services, or hold out to the public as being entitled to practice; or in any manner assume to be an attorney at law, or assume, or use or advertise the title of lawyer, attorney or counselor, or any equivalent title, in such manner as to convey the impression that such person is entitled to practice law, or in any manner advertise that such person either alone or together with any other person or persons maintains an office for the practice of law in the District of Columbia, without being an enrolled active member of the Bar.

(3) The practice of law as used in this rule shall include, but is not limited to, appearing for any other person as attorney in any court, or preparing for any other person any deeds, mortgages, contracts, assignments, discharges, leases, trust instruments or any other instruments affecting real or personal property or any interest therein, or any wills, codicils, or any other instruments affecting the disposition of property or decedents' estates, or any pleadings of any kind in any action brought before any court, or preparing or expressing formal opinions or consulting with respect to any of the foregoing or on any other matters of law.

3. D.C.App.R. 49(b) does more than merely prohibit persons from stating they are a licensed member of the District of Columbia Bar when in fact they are not. The rule also provides that no person shall "hold out to the public as being entitled to practice; or in any manner assume to be an attorney at law, or assume, *or use or advertise the title of lawyer, attorney or counselor, or any equivalent title,* in such a manner as to convey the impression that such person is entitled to practice law ... without being an enrolled active member of the Bar." D.C.App.R. 49(b)(2) (emphasis added).

Respondent claims that he is entitled to represent himself as a "lawyer" because he is a law school graduate. However, Rule 49(b) plainly prohibits respondent from using or advertising the "title of lawyer." *Id.* This prohibition is consistent with the statutes of no fewer than fourteen states that expressly provide that persons may not hold themselves out as lawyers or use the title "lawyer" unless they are licensed members of the state bar.[8] Respon-

---

6. This issue is presently on appeal before a division of this court. *See Brookens v. Committee on Unauthorized Practice of Law,* 538 A.2d 1120 (D.C.App.1988).

7. *See* Petitioner's Proposed Findings of Fact and Conclusions of Law, at Paragraph 26. This issue was not litigated at the hearing in this matter, and the court declines to decide it here. The issue is, however, before a division of this court in the *Brookens* case. *See supra* note 6.

8. *See* Ala.Code § 34–3–1 (1985); Conn.Gen.Stat. Ann. § 51–88 (West 1985); Ga.Code Ann. § 15–19–51 (1985); La.Rev.Stat.Ann. § 37:213 (West 1974); Mich.Comp.Laws Ann. § 600.916 (West 1981); N.J.Stat.Ann. § 2A:170–78 (West 1981); N.M.Stat.Ann. § 36–2–28 (1984); N.Y. Judiciary Law § 478 (McKinney 1983, 1986 Supp.); Ohio Rev.Code Ann. § 4705.07 (Baldwin 1982); 42 Pa.Cons.Stat.Ann. § 2524 (Purdon 1981); R.I.Gen.Laws § 11–27–1 (1981); Utah Code Ann. § 78–51–25 (1987); W.Va.Code Ann.

dent's graduation from law school does not entitle him to call himself a lawyer. "[T]he words 'lawyer' and 'attorney' are synonymous, and hence anyone advertising himself as a lawyer holds himself out to be an attorney, attorney at law, or counselor at law." *In re Page,* 257 S.W.2d 679, 684 (Mo.1953) (quoting *People ex rel. Colorado Bar Ass'n v. Taylor,* 56 Colo. 441, 138 P. 762, 763 (Colo.1914)); *see also Merrick v. American Security & Trust Co.,* 71 App. D.C. 72, 7⁻ 107 F.2d 271, 273 (1939). It has recently been held that a law school graduate is not a lawyer because neither the commonly accepted meaning of the term nor its technical definition allow such usage. *Binkley v. People,* 716 P.2d 1111, 1113–14 (Colo.1986). The court held that both the commonly accepted meaning of "lawyer" and its technical definition denote a person licensed to practice law. *Id.* The argument that the term "lawyer" includes unlicensed law school graduates was specifically rejected. In the words of the court:

> The common definition of "lawyer" is "a specialist in or a practitioner of law"—that is, one whose profession "is to conduct lawsuits for clients or to advise as to the prosecution or defense of lawsuits or as to legal rights and obligations in other matters." *Webster's Third New International Dictionary* 1280 (1971). As long ago as 1908 this court observed that the term "lawyer" is generally understood to refer to a professional person "legally authorized to appear for and represent clients who are parties to causes in courts of record." *People ex. rel. Colorado Bar Association v. Erbaugh,* 42 Colo. 480, 487–88, 94 P. 349, 352 (1908). This commonly accepted meaning of the term refutes the notion that a lawyer is anyone who has studied law, even though he or she may not have fulfilled the qualifications necessary to engage in the practice of law.

*Id.* at 1113–14. We agree with the Colorado Supreme Court that "lawyer" is generally understood as synonymous with "attorney," and we therefore reject the argument that respondent is properly deemed a "lawyer" despite not having qualified to practice law in any jurisdiction.

■ 4. The evidence also shows that respondent represents to the public that he is a former administrative law judge because he served as a hearing examiner for the District of Columbia Office of Human Rights and the District of Columbia Rental Accommodations Office. Petitioner contends that the public is thereby misled into believing that respondent is licensed to practice law in the District of Columbia. It is true that in the context of federal agencies, "hearing examiner" may be synonymous with "administrative law judge," as is demonstrated by a 1978 amendment to the Administrative Procedure Act which substituted the latter term for the former. *Compare* 5 U.S.C. § 556(b)(3) (1977) *with id.* (Supp.1987). Evidence of common parlance, however, is not tantamount to evidence that District of Columbia agencies have adopted this synonymity of titles. To the contrary, both the Rental Accommodations Office and the Office of Human Rights continue to expressly refer to respondent's former positions as "hearing examiner." *See* D.C.Code § 1–2551 (1987); *id.* § 45–2514(d) (1986). Thus, respondent's use of "administrative law judge" is factually inaccurate, and we find that its use in advertisements, resumes, business cards, stationery and other firm descriptions is reasonably calculated to mislead the public into believing that respondent is necessarily licensed to practice law. Accordingly, we conclude that respondent should be prohibited from holding himself out to the public as a former administrative law judge.

We similarly find objectionable respondent's use, or the manner of use, of such terms and titles as administrative trial ad-

§ 30–2–4 (1986); Wisc.Stat.Ann. § 256.30 (West 1982).

Additionally, the statutes of four other states indicate that one is not a lawyer unless licensed to practice law. *See* Fla.Stat.Ann. § 454.23

(West 1981); Ind.Code Ann. § 33–1–5–1 (Burns, 1975, 1980 Supp.); Minn.Stat.Ann. § 481.02 (West 1971, 1987 Supp.); and N.C.Gen.Stat. § 84–4 (1985).

vocate,[9] in-house counsel, member of the World Council (or Association) of Lawyers and member of the National District Attorneys Association. Respondent uses the foregoing terms and titles in advertisements, resumes, business cards and stationery in connection with his representation before federal and District of Columbia administrative agencies. As the hearing testimony showed, such use leads, and is intended to lead, the layman to incorrectly assume that respondent is qualified to practice law in the District of Columbia. Accordingly, respondent's use of these terms must also be prohibited unless they are currently factually accurate; and, even if factually accurate, they may not be used in such a way as to reasonably create the impression he is qualified to practice law in this jurisdiction.

5. Respondent contends that notwithstanding any other express or implied representations, the Disclosure of Representative Capacity Statement that some of his clients execute, *see* Summary of Evidence, at paragraph 10, dispels any false impression about his capacity and authorization to practice law. We disagree. The disclosure statement, reasonably viewed, actually fosters false impressions. For example, the very sentence of acknowledgement that respondent is not licensed to practice law contains references to respondent's former positions which a layman would assume were predicated on a license to practice law. The overall effect of the statement thus encourages the very misimpressions that it purports to dispel. This is shown by the testimony of several witnesses who either did not remember having seen or signed the statement, or were confused by its content. That the general public represented in this proceeding concluded from all the circumstances that respondent was duly qualified to practice law in this jurisdiction, despite his "disclosure" to the con-

trary, is demonstrated by the following credited hearing testimony:

I thought that you [Respondent] were a lawyer. I thought that you were an attorney. I thought, looking at the business card, that these were all the specific areas [in which] your expertise lied [sic]. I should have questioned "J.D." I thought maybe that was a nickname or something. I didn't know what J.D. was. I should have questioned some of the stuff, but what I was more concerned about, emotionally distraught about ... where do I fit in under all these little specifics that he does and the unemployment and the grievance and the human rights and that kind of thing.

Similarly, another credited witness, when asked whether she thought she was being represented by a licensed member of the District of Columbia Bar, testified:

[W]hen I see something that says legal services, I don't question whether a person is licensed. I say: this person can help me with my problem, which apparently is a legal problem because, it's described here under legal services. I'm not so sophisticated to know the professional certification that lawyers are supposed to have, so I don't think in terms of [whether] it's somebody approved by the [Bar].

We think that in view of the credited testimony elicited at the hearing, there can be little question but that the public was misled by respondent's representations, notwithstanding the disclosure statement. If a disclosure statement encourages the very misimpressions that it pretends to dispel, then nothing has effectively been disclosed.

## CONCLUSIONS

Because respondent is not and never has been a member of the District of Columbia Bar, or any other Bar, and in light of the evidence of his overall pattern of behavior

---

9. The term "advocate," especially when used in conjunction with the word "trial" denotes that one is licensed to practice law. This conclusion is supported by Black's Law Dictionary 51 (5th ed.1979) which defines "advocate" as:

One who assists, defends, or pleads for another. One who renders legal advice and aid and pleads the cause of another before a court or a tribunal, a counselor. A person learned in the law, and duly admitted to practice, who assists his client with advice, and pleads for him in open court. An assistant; adviser; a pleader of causes.

of generating and fostering the illusion that he is a qualified member of the District of Columbia Bar, and his failure to remove that illusion, this court concludes that respondent has violated D.C.App.R. 49(b). The court further concludes that (1) that respondent should be enjoined from future violations of Rule 49(b); and (2) that the accompanying Judgment and Order, in addition to prohibiting respondent from using specific titles, should mandate that because respondent's representation of others in proceedings before federal and District of Columbia administrative agencies is quasi-judicial in nature, he disclose in all advertising materials, business cards, firm resumes, and stationery, etc., in an unequivocal and unmistakable manner that he is not licensed to practice law in the District of Columbia.

An affirmative and unequivocal disclosure is necessary in this case because the titles and terms used by respondent to describe his qualifications, irrespective of the factual accuracy of such representations, have been so presented as to deceive the public. It requires that the court place the burden on respondent to dispel any mistaken impression that he is a qualified member of the District of Columbia Bar. Such affirmative disclosure is also necessary in this case in order to effectuate the purpose of Rule 49(b) which is to protect the layman who seeks legal services. It should be borne in mind that respondent has already violated express terms of the settlement agreement he previously entered into with the Unauthorized Practice Committee.

**10.** Although the Committee requested, in addition to the injunctive relief granted by the accompanying Order and Judgment, an accounting of all fees received by respondent, restitution of all fees received, and notice by respondent by advertisement in the *Washington Post* and by letter to all clients that he is not an attorney authorized to practice law in the District of Columbia, we find such relief unwieldy in this particular case. A termination of respondent's misleading activities appears to be the realistic remedy in the circumstances of this case. This includes a requirement that there be a written notification to his clients presently being represented by him that he is not qualified to practice law in the District of Columbia even though he was previously a Hearing Examiner in the District of Columbia.

The essence of Rule 49(b) is its recognition that a person in need of legal services is and ought to be entitled to have confidence that one whose conduct and activity give rise to the impression that he is authorized to practice law in the District of Columbia is, in fact, so authorized. Hence, the Rule as applied in this case requires affirmative disclosure in order that the public be protected. The public should not be required to undertake the task of determining the factual accuracy of representations made by those who effectively hold themselves out to be qualified to practice law.[10] Such a requirement would place an unreasonable and unnecessary burden on the public.

An appropriate Order is being entered simultaneously with these findings and conclusions.

Judgment and Order, and Memorandum Opinion in unauthorized practice of law proceeding before single judge of the Court of Appeals in accordance with Rule 49.

Ordered to be published on March 21, 1989.

Rehearing en banc denied *sub nom.* No. 87-1339 on April 21, 1989.

## JUDGMENT AND ORDER

This court having found and concluded that respondent, Simon Banks, has violated this court's rule prohibiting the unauthorized practice of law, D.C.App.R. 49(b),[1] it is this 23rd day of November, 1987,

ORDERED and ADJUDGED that respondent is hereby permanently enjoined

1. D.C.App.R. 49(b) provides:
   (b) Practice of law in the District of Columbia.
   (1) No person shall regularly engage in the practice of law in the District of Columbia or in any manner hold out as authorized or qualified to practice law in the District of Columbia unless enrolled as an active member of the Bar.
   (2) No person, firm, association, bank or corporation shall, in the District of Columbia, advise or counsel any person on matters affecting legal rights, or practice or appear as an attorney at law for a person other than such person in any court, or furnish an attorney or attorneys to render legal services, or hold out to the public as being entitled to

and restrained, under Super.Ct.Civ.R. 65, from (1) the practice of law in the District of Columbia, as the term "practice of law" is defined in D.C.App.R. 49(b)(1) and (3); and (2) holding out to the public that he is authorized to practice law in the District of Columbia in violation of the provisions of D.C.App.R. 49(b)(2). It is

FURTHER ORDERED that respondent is hereby permanently enjoined and restrained specifically from:

(1) Representing any person, other than himself, or any corporation, association, partnership, organization, or other entity in any court in the District of Columbia unless he is a member of the bar of the court in which such representation takes place;

(2) Using such terms to describe himself or his qualifications as "lawyer," "attorney," "counsel," "counselor," "Esquire," "advocate," or any abbreviation of the foregoing terms, or any other term or description which reasonably denotes that respondent is licensed to practice law in the District of Columbia;

(3) Using such terms to describe himself or his qualifications as "administrative law judge," "administrative trial advocate," any abbreviation of the foregoing terms, or any other similar term or description also which reasonably denotes that respondent's former employment as a hearing examiner constitutes a qualification or license to practice law in the District of Columbia;

(4) Using any advertising materials, business cards, firm resumes, personal resumes, firm descriptions, stationery, personalized forms or any other business documents relating to representation of individuals before administrative agencies or courts in this jurisdiction which do not expressly state in a separate paragraph and in one complete sentence [2] at the outset of the document that respondent is "not admitted to the practice of law in the District of Columbia or any other jurisdiction";

(5) Continuing to represent any client presently being represented without giving such client prompt notice of respondent's lack of admission to the District of Columbia Bar in accordance with the specifications in paragraph (4) of this Order;

(6) Otherwise engaging in verbal or written conduct which is calculated to mislead the public into concluding that respondent is licensed to practice law in the District of Columbia;

(7) Otherwise engaging in verbal or written conduct which is intended to mislead the public into concluding that respondent maintains an office for the practice of law in the District of Columbia;

(8) Preparing for any person or for any client's signature *pro se*, any complaint, motion, or other pleading or brief for filing in any court located in the District of Columbia;

(9) Preparing any contract, deed, mortgage, discharge, assignment, lease, trust instrument, will, codicil, or other instrument for any person, or preparation of any legal opinion;

practice; or in any manner assume to be an attorney at law, or assume, or use or advertise the title of lawyer, attorney or counselor, or any equivalent title, in such manner as to convey the impression that such person is entitled to practice law, or in any manner advertise that such person either alone or together with any other person or persons maintains an office for the practice of law in the District of Columbia, without being an enrolled active member of the Bar.

(3) The practice of law as used in this rule, shall include, but is not limited to, appearing for any other person as attorney in any court, or preparing for any other person any deeds, mortgages, contracts, assignments, discharges, leases, trust instruments or any other instruments affecting real or personal property or any interest therein, or any wills, codicils, or any other instruments affecting the disposition of property or decedents' estates, or any pleadings of any kind in any action brought before any court, or preparing or expressing formal opinions or consulting with respect to any of the foregoing or on any other matters of law.

2. The purpose of this provision on separateness is to deal with respondent's pertinent activities as revealed by the record in this proceeding and the findings and conclusions entered and to avoid intermingling of the statement with other representations in such a way as to negate the impact on the public of the disclaimer, as respondent has done in the past.

(10) Preparing or expressing formal opinions or consulting with respect to any of the items enumerated in paragraphs (7) and (8) of this Order, or on any other matters of law; and

(11) Otherwise engaging in any manner in the practice of law in the District of Columbia, as that term is defined in D.C. App.R. 49(b)(3), or in any conduct that holds respondent out as authorized or qualified to practice law in the District of Columbia, or in any other conduct prohibited by D.C.App.R. 49(b). It is

FURTHER ORDERED that in the event that respondent becomes a qualified active member of the District of Columbia Bar at any time in the future, the injunctive provisions of this Judgment and Order shall thereupon cease to be of any force or effect.