Simon BANKS, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF CONSUMER AND REGULA-
TORY AFFAIRS, Respondent.

No. 91–AA–883.

District of Columbia Court of Appeals.

Argued Sept. 22, 1993.

Decided Dec. 6, 1993.

Simon Banks, pro se.

Mary L. Wilson, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for respondent.

Before FERREN and SCHWELB, Associate Judges, and PRYOR, Senior Judge.

FERREN, Associate Judge:

Petitioner Simon Banks, who is not a lawyer, seeks reversal of a decision of the Department of Consumer and Regulatory Affairs (DCRA), which concluded that Banks had committed six unlawful trade practices in violation of the Consumer Protection Procedures Act, D.C.Code § 28–3904 (1991), by rendering legal advice to the complainant, Glenard N. Hodges. DCRA ordered Banks to pay $800 in compensatory damages plus interest to Hodges, $175 in court costs, $1,500 in civil penalties ($250 for each violation), and the reasonable costs expended by DCRA. See D.C.Code §§ 28–3903(a)(13), –3905(g)(2), –3905(g)(4), –3905(i)(3) (1991). Banks contends that DCRA exceeded its statutory authority.[1] Pursuant to D.C.Code § 28–3905(i)(1) (1991), we review this decision under the District of Columbia Administrative Procedure Act, D.C.Code § 1–1510 (1992). We affirm in part and reverse in part.

---

1. Banks also makes various arguments that were not raised at DCRA. Specifically, he contends that DCRA has deprived petitioner of his right to equal protection under the law, his due process rights, and his rights under the Contract Clause and the Supremacy Clause of the United States Constitution. Banks also asserts that DCRA's actions violated his First and Thirteenth Amendment rights and also violated the Privileges and Immunities Clause of the United States Constitution. Banks further contends that DCRA's actions constitute a "Regulatory Taking," a selective prosecution, a violation of the District of Columbia Ethics Act, and a violation of his privacy rights. Finally, Banks suggests that DCRA, the District of Columbia Bar, and others have violated the Sherman Antitrust Act and are guilty of violating the Racketeer Influenced Corrupt Organizations Act (RICO). "In the absence of exceptional circumstances, this court will not entertain contentions not raised before the agency." *Glenbrook Road Ass'n v. District of Columbia Bd. of Zoning Adjustment*, 605 A.2d 22, 33 (D.C.1992). "Administrative and judicial efficiency require that all claims be first raised at the agency level to allow appropriate development and administrative response before judicial review." *Hughes v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 567, 570 (D.C. 1985). The circumstances of this case are not sufficiently exceptional to warrant our consideration of the issues Banks failed to preserve by presenting them to DCRA.

## I.

In 1987, this court, in response to a petition by its Committee on Unauthorized Practice of Law, concluded that Banks had violated the court's rule prohibiting the unauthorized practice of law, D.C.App.R. 49(b). *See In re Banks*, 561 A.2d 158 (D.C.1987). Banks had graduated from law school in 1975 but had never become a member of any bar. *Id.* at 159.[2] This court permanently enjoined Banks from practicing law in the District of Columbia and from holding himself out to the public as someone authorized to practice law in the District. *Id.* at 167–68. In particular, we enjoined Banks from representing himself as a "lawyer," "attorney," "counsel," "advocate," "administrative law judge," or "administrative trial advocate." *Id.* at 168.

Glenard Hodges filed a complaint against Banks on June 28, 1989, with DCRA's Office of Compliance. In that complaint, Hodges claimed that on May 31, 1989, he had paid Banks, who was doing business as "Job Protectors," $800 to file a harassment complaint with Hodges' employer. Hodges also asserted that he had cancelled Banks' services before Banks performed any work, that Banks had promised to refund Hodges' money, and that Hodges had never received the refund.

A DCRA investigator conducted a telephone interview with Hodges around March 7, 1990, and interviewed Banks on June 7, 1990. The investigator's report, completed on August 14, 1990, determined that there was enough evidence that Banks had committed trade practice violations to warrant referral to the Enforcement Division of DCRA's Office of Compliance. On January 23, 1991, that Office filed a petition with DCRA's Office of Adjudication alleging that Banks had violated the Consumer Protection Procedures Act and seeking relief on Hodges' behalf. The petition specifically claimed that Banks had "charged Complainant legal fees[,] ... told Complainant that he knows the law[,] ... that he was an expert in job protection[,] ... [and] that he does basically everything that a lawyer does."

The Office of Adjudication held a hearing on April 22, 1991. Although Banks was served with a summons, he did not appear at the hearing. Hodges testified that he had been having problems with his job at the Washington Metropolitan Area Transit Authority and that he had telephoned Job Protectors for help in May 1989. During this phone conversation, Banks told Hodges that there would be a $50 consultation fee, and Hodges agreed to meet with Banks.

Hodges then testified to the events that took place at his meeting with Banks on May 29, 1989. Banks told Hodges that Hodges had an Equal Employment Opportunity (EEO) case and that Banks would begin preparing the package to file with EEO. Banks added that Hodges' situation was critical, time was of the essence, and they had to start immediately. Banks also told Hodges that Banks was an "administrative advocate," that he had worked for a judge, and that he was handling a number of cases. Banks said that Hodges did not need a lawyer because Banks was an expert in this particular field. When asked whether he thought Banks was a lawyer, Hodges responded:

> He—no, well I don't think he was a lawyer per se, but I thought he was like a legal representative or someone with experience in this particular field of Job Protectors, you know, the filing of the motions and the write-ups and to get me through without paying—because what he indicated to me I did not necessarily need a lawyer because he knew more about this type of thing than anybody else. That is what his profession was, Job Protectors.

Hodges paid Banks the $50 "consultation fee" during their May 29 meeting. At their second meeting, Hodges explained the details of his situation to Banks, and Banks asked Hodges for $2,000 to handle the case. Banks ultimately accepted an $800 down payment. Hodges paid it with $150 in cash and a $650 check, which had a notation in the memo portion that the check was for "legal fees." The check was made payable to the order of

2. Banks nonetheless had held the position of hearing examiner at the District of Columbia Office of Human Rights in 1975–76 and later had held the same position at the District of Columbia Rental Accommodation Office. *See In re Banks,* 561 A.2d at 159.

"Job Protectors." Banks did not provide a written contract for the services, but he told Hodges that he would prepare a contract later, after he had prepared the initial papers. According to Hodges, "as soon as [Banks] got those initial papers we would get a contract and draw up a contract for the balance of the [$]2,000.00."

Later that day, Hodges received a telephone call from his bank informing him that Banks was trying to cash the check that Hodges had written. Hodges' bank informed him that Banks was getting belligerent and upset because the bank refused to cash the check without identification that proved that Banks was authorized to cash checks for Job Protectors. The bank went ahead and cashed the check for Banks, but Hodges became very "suspicious" and "uncomfortable" that Banks needed the money so badly that he had to cash the check immediately. Hodges then called Banks to cancel their arrangement and get his money back. Banks agreed to mail Hodges a refund within "a couple of days." A week later, Hodges contacted Banks again because he had not received the money. Banks again promised to mail a check to Hodges. Hodges never received any money from Banks, and Hodges attempted but was unable to contact Banks again.

Based on this record, DCRA concluded that Banks had committed six unlawful trade practices. Specifically: "[Banks'] use of the title 'administrative advocate' and rendering of legal advice misrepresented that his services had a sponsorship, approval, certification, characteristic, and were of a particular standard, or quality when it did not in violation of D.C.Code § 28–3904(a), (b) and (d)."

Furthermore, "[Banks] accepted $800.00 as partial payment for services he did not render in violation of D.C.Code § 28–3904(e); failed to provide Complainant with a written contract in violation of D.C.Code § 28–3904(q); and failed to remit Complainant's money in the amount of $800.00 in violation of D.C.Code § 28–3904(u)." [3]

DCRA ordered Banks to pay $800 plus interest to Hodges; to pay $175 to the District as court costs; and to pay the District a civil penalty of $250 for each of the six trade practice violations he committed, for a total assessment of $1,500.

## II.

### A.

Banks contends that DCRA exceeded its statutory authority in ruling that he committed trade practice violations. His argument is premised on the belief that only this court has jurisdiction over issues concerning the practice of law and, failing that, on the contention that his actions did not amount to unlawful trade practices under the Act. See *supra* note 3.

■ This court has the "inherent and exclusive authority to define and regulate the practice of law in the District of Columbia." *Brookens v. Committee on Unauthorized Practice of Law,* 538 A.2d 1120, 1125 (D.C. 1988); *see* D.C.Code § 11–2501 *et seq.* (1989). In addition, this court's rules reflect our authority over the practice of law in this jurisdiction. *See* D.C.App.R. 46–50.

---

3. The provisions of D.C.Code § 28–3904 that DCRA charged Banks with violating are as follows:

It shall be a violation ... for any person to: (a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have; (b) represent that the person has a sponsorship, approval, status, affiliation, certification or connection that the person does not have;

\* \* \* \* \* \*

(d) represent that goods or services are of particular standard, quality, grade, style or model, if in fact they are of another;

(e) misrepresent as to a material fact which has a tendency to mislead;

\* \* \* \* \* \*

(q) fail to supply to a consumer a copy of a sales or service contract, lease, promissory note, trust agreement or other evidence of indebtedness which the consumer may execute;

\* \* \* \* \* \*

(u) represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not; ...

■ This court also exercises some authority over the unauthorized practice of law by nonlawyers, *see* D.C.App.R. 49, but there is no statutory or other authority to the effect that our power over the unauthorized practice of law is exclusive. Although the Consumer Protection Procedures Act excludes from its purview the "professional services of ... lawyers," D.C.Code § 28–3903(c)(2)(C) (1991), there is no statutory exclusion barring application of the Act to nonlawyers who purport to practice law. Nor do the Act's prohibitions against deceptive trade practices interfere with this court's authority to regulate the practice of law. We see no reason, therefore, why the Act should not apply to nonlawyers who purport to practice law.

■ The Act defines "trade practice" as "any act which does or would create, alter, repair, furnish, make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate, a sale, lease or transfer, of consumer goods or services." D.C.Code § 28–3901(a)(6) (1991). "Goods and services" are defined as "any and all parts of the economic output of society, at any stage or related or necessary point in the economic process, and includes consumer credit, franchises, business opportunities, real estate transactions, and consumer services of all types." D.C.Code § 28–3901(a)(7) (1991). We agree with DCRA that the performance of legal services is an act that "make[s] available," or "provide[s] information about," a "service[ ]" that is "part[ ] of the economic output of society." The performance of legal services, therefore, is a "trade practice" under the Act.

**B.**

DCRA concluded, first, that Banks violated three provisions of the Act, D.C.Code § 28–3904(a), (b) and (d), by engaging in the unauthorized practice of law. In particular, the agency found that Banks had rendered legal advice and misrepresented to Hodges that Banks was an "administrative advocate," in violation of this court's order enjoining Banks not only from practicing law but also from holding himself out as someone who appears to give legal advice.[4] *See In re Banks,* 561 A.2d at 168. More specifically, DCRA found: "Respondent, trading as Job Protectors, Administrative Advocates, represented to Complainant that he was an Administrative Advocate ... Complainant, believing Respondent was a lawyer, stated that Respondent made no distinction between himself and that of a lawyer." Finding of Fact 2.

■ DCRA's finding that Hodges "believ[ed] Respondent was a lawyer" was clear-

---

4. According to this court:

Because respondent [Banks] is not and never has been a member of the District of Columbia Bar, or any other Bar, and in light of the evidence of his overall pattern of behavior of generating and fostering the illusion that he is a qualified member of the District of Columbia Bar, and his failure to remove that illusion, this court concludes that respondent has violated D.C.App.R. 49(b) [forbidding the unauthorized practice of law].

*In re Banks,* 561 A.2d at 166–67. Among the prohibitions this court imposed on Banks are the following:

FURTHER ORDERED that respondent is hereby permanently enjoined and restrained specifically from:

\* \* \* \* \* \*

(2) Using such terms to describe himself or his qualifications as "lawyer," "attorney," "counsel," "counselor," "Esquire," "advocate," or any abbreviation of the foregoing terms, or any other term or description which reasonably denotes that respondent is licensed to practice law in the District of Columbia;

(3) Using such terms to describe himself or his qualifications as "administrative law judge," "administrative trial advocate," any abbreviation of the foregoing terms, or any other similar term or description also which reasonably denotes that respondent's former employment as a hearing examiner constitutes a qualification or license to practice law in the District of Columbia;

(4) Using any advertising materials, business cards, firm resumes, personal resumes, firm descriptions, stationery, personalized forms or any other business documents relating to representation of individuals before administrative agencies or courts in this jurisdiction which do not expressly state in a separate paragraph and in one sentence at the outset of the document that respondent is "not admitted to the practice of law in the District of Columbia or any other jurisdiction";

\* \* \* \* \* \*

*Id.* at 168 (footnote omitted).

ly erroneous, in light of Hodges' testimony. See *supra* at 4. But the related finding is supported by the record: Hodges testified (and DCRA implicitly found) that Banks "made no distinction between himself and that of a lawyer." In short, the record supports DCRA's finding that Banks misrepresented himself as the functional equivalent of a lawyer, see Finding of Fact 2 ("no distinction between himself and that of a lawyer"), an action that parallels the behavior this court found so significantly misleading that we permanently enjoined Banks from holding himself out not only as a "lawyer" or "counselor" but also as an "advocate" or an "administrative trial advocate." See Finding of Fact 8; *supra* note 4. DCRA's finding that Banks misrepresented himself as an advocate with skills equivalent to those of a lawyer adequately supports DCRA's conclusion that Banks violated D.C.Code § 28–3904(a), (b) and (d). See *supra* note 3.[5]

■ The fact that DCRA used this court's analysis in *In re Banks* as the basis for defining the practice of law for purposes of evaluating whether Banks engaged in deceptive trade practices is not troublesome. We see no reason why DCRA cannot construe the statute it administers in a way that equates various trade practice violations with the kinds of conduct this court found misleading in *In re Banks*. DCRA had no better way to define the unauthorized, and thus deceptive, practice of law. We believe the agency acted entirely properly, therefore, in agreeing with this court that Banks' mode of operation—including the terminology he used

(*e.g.*, "administrative advocate")—misrepresented himself under the circumstances as the purveyor of "legal advice" that "had a sponsorship, approval, certification, characteristic, and were of a particular standard, or quality when it did not in violation of D.C.Code, sec. 28–3904(a), (b) and (d)." Even if Hodges understood that Banks was not a licensed lawyer, DCRA found—and the record supports the finding—that Banks misrepresented his status as being equivalent to a lawyer for the kind of problem Hodges presented.

DCRA made its own, independent findings about Banks' conduct based on hearing testimony and documentary evidence; it did not merely incorporate this court's findings in *Banks*. Substantial evidence of record supports DCRA's findings. We therefore are reviewing DCRA's independent evaluation of Banks' conduct under a statute barring deceptive trade practices; we are not holding Banks in contempt of court, as our dissenting colleague appears to argue. See *post* at note 4.[6]

### C.

■ DCRA also concluded that Banks violated D.C.Code § 28–3904(e) by accepting $800 from Hodges "as partial payment for services he did not render," and violated D.C.Code § 28–3904(u) by failing "to remit complainant's money in the amount of $800.00."[7] Both conclusions about Banks' conduct are literally true, but a question

---

5. Banks did not raise before the agency, nor does he argue on appeal, that these three violations duplicated one another. We therefore do not address the propriety of imposing a civil penalty for each of these violations.

6. Judge SCHWELB, in his separate opinion, calls our decision in *In re Banks* "irrelevant." *Post* at note 4. We agree that *In re Banks* is irrelevant in the sense that DCRA is not purporting to enforce it; DCRA has brought an independent statutory action based on an altogether new record. Our opinion in *Banks* is relevant, however, in the sense that DCRA, in administering the statute, has authority to use the norms announced in *In re Banks* as the basis for defining an unlawful trade practice. Presumably, therefore, anyone else conducting himself or herself as Banks did would be subject to statutory sanctions

(just as Banks is here) based on application of the norms—the concepts characterizing the unauthorized practice of law—outlined in our *In re Banks* opinion.

7. DCRA found: "Complainant met with Respondent on May 31, 1991, as scheduled and gave him a check in the amount of $650 and $150 in cash." Finding of Fact 4. "Shortly thereafter, Complainant cancelled Respondent's services and requested that the $800.00 in filing fees be returned. Respondent agreed to return Complainant's money by check the next day. Complainant has been unable to reach Respondent by phone or office visits." Finding of Fact 5. Implicit in DCRA's conclusion of law, based on Hodges' testimony, is a further factual finding that Banks did not return the money.

remains: whether, on the facts, these conclusions reflect violations of the Act.

■ D.C.Code § 28–3904(e) prescribed a violation for a "misrepresent[ation] as to a material fact which has a tendency to mislead." This provision appears to be forward looking: did a party make a material misrepresentation that tended to mislead someone thereafter? Although we are obliged to give deference to an agency's interpretation of a statute it administers, we are not required to do so when that interpretation "conflicts with the plain meaning of the statute or its legislative history." *Smith v. Department of Employment Servs.*, 548 A.2d 95, 97 (D.C.1988); *see Nova Univ. v. Educational Inst. Licensure Comm'n*, 483 A.2d 1172, 1190–91 (D.C. 1984). Here, DCRA found a § 28–3904(e) violation because Banks accepted $800 "as partial payment for services he did not render." That finding does not meet § 28–3904(e) criteria. Even if Banks implicitly misrepresented a material fact—that he performed services for the $800—there was no discernible "tendency to mislead." At all times Banks apparently stood ready to perform the services for the fee agreed upon, but Hodges dismissed Banks on the very day he gave Banks the $800, before Banks had had an opportunity to perform any service whatsoever. Banks' acceptance of the $800 was based on a commitment to proceed on Hodges' behalf—a commitment that Hodges, not Banks, cancelled. In short, there could have been no tendency to mislead since Hodges himself had declared that no services were to be performed. We therefore must conclude there is not substantial evidence to support DCRA's ruling that Banks violated § 28–3904(e).

**D.**

■ D.C.Code § 28–3904(u) is equally problematic: it presupposes a "represent[ation] that the subject of a transaction has been supplied in accordance with a previous representation when it has not." D.C.Code § 28–3904(u). This provision calls for a backward look: did a party make a present misrepresentation that he or she has done something pursuant to a previous representation. Here, Banks' refusal to refund Hodges' $800 amounted to a misrepresentation only if Banks, in retaining the money, explicitly or implicitly represented that he was entitled to it either (1) as compensation for services, when in fact he had not rendered any, or (2) as damages for Hodges' breach of contract when in fact Hodges had not committed a breach. There is no finding, however, that Banks made either kind of representation. As noted above, on the very day that Banks contracted to perform services, Hodges cancelled the deal. It is therefore impossible to discern from this record how Banks—in keeping the $800—could have represented that he performed services for it. Nor is there any evidence that Banks considered the $800 as damages of some sort. The only relevant record evidence appears to be Hodges' testimony that Banks agreed to return the money but never did so. There is a simple finding to that effect; DCRA said the "record shows that Complainant tendered a sum of $800.00 to the Respondent for services that were never performed." In short, there is no factual finding or record evidence that Banks based his retention of the $800 on a representation of any kind; for all we can tell Banks simply refused to return the money because he was out of funds or elected to keep the $800 out of spite. We therefore conclude that no substantial evidence supported DCRA's ruling that Banks violated § 28–3094(u).

**E.**

■ Finally, DCRA concluded that Banks violated D.C.Code § 28–3904(q) by "fail[ing] to provide Complainant with a written contract." The record does not support this conclusion. DCRA found, based on Hodges' testimony that Banks had "promised to give Complainant a contract after filing fees had been paid and the initial paper work had been completed." Hodges testified at the DCRA hearing that he had "never received a contract." The problem is, as noted above, that Hodges cancelled Banks' employment almost immediately, before Banks had had an opportunity to complete "the initial paper work," which DCRA itself found was to be the event entitling Hodges to a written contract. Banks had no obligation, other

than that conditional promise that Hodges himself interdicted, to supply a written contract. Accordingly, we must conclude that DCRA's ruling that Banks engaged in a deceptive trade practice in violation of § 28–3904(q) is not supported by substantial evidence.

### III.

Based on the foregoing analysis, DCRA's order is affirmed in part and reversed in part. We conclude that DCRA had authority to proceed against Banks under the Consumer Protection Procedures Act. We sustain DCRA's rulings that Banks engaged in three deceptive trade practices attributable to D.C.Code § 28–3904(a), (b), and (d), based on the unauthorized practice of law. We further conclude, however, that the required substantial evidence, *see* D.C.Code § 1–1510(a)(3)(E) (1992), does not support the agency's deceptive trade practice rulings under D.C.Code § 28–3904(e), (q), and (u). We therefore affirm DCRA's order to the extent of requiring Banks to pay Hodges $800, plus interest, reflecting restitution for failure of consideration; to pay the District $175 in court costs; and to pay the District a civil penalty of $250 for each of three trade practice violations, totalling $750.[8]

*So ordered.*

SCHWELB, Associate Judge, concurring in part and dissenting in part:

I regret that I am unable to join my colleagues in sustaining the agency's imposition of sanctions against Banks for allegedly deceptive trade practices. It is questionable, in my view, whether there is sufficient evidence in the record to support the relief granted. Assuming that there is sufficient evidence, the findings of the Administrative Law Judge (ALJ) are woefully inadequate to enable this court to carry out its responsibility to conduct meaningful judicial review.

### I.

I agree with my colleagues that Banks' failure to repay the money advanced to him

by Hodges has not been shown to be an unlawful trade practice proscribed by the Consumer Protection Procedures Act (CPPA). The retention of the fee was not a representation at all, and therefore could not be a misrepresentation. I disagree with the apparent suggestion at page 12 of the majority opinion that by not repaying Hodges, Banks may have "implicitly misrepresented a material fact—that he performed services for the $800." As my colleagues point out later, at page 13, Banks may have refused to return the money because of insolvency or just plain orneriness. In any event, there is no evidence that Banks made any representation, true or false, explicit or implicit, on this particular subject.

This leaves the charge that Banks misrepresented his qualifications and status as a non-lawyer, allegedly in violation of three different provisions of the statute (each of which violations supposedly warrants a separate penalty). The majority has summarized the record evidence on this aspect of the case as follows:

> Banks told Hodges that Hodges had an Equal Employment Opportunity (EEO) case and that Banks would begin preparing the package to file with EEO. Banks added that Hodges' situation was critical, time was of the essence, and they had to start immediately. Banks also told Hodges that Banks was an "administrative advocate," that he had worked for a judge, and that he was handling a number of cases. Banks said that Hodges did not need a lawyer because Banks was an expert in this particular field. When asked whether he thought Banks was a lawyer, Hodges responded:
>
> > He—no, well I don't think he was a lawyer per se, but I thought he was like a legal representative or someone with experience in this particular field of Job Protectors, you know, the filing of the motions and the write-ups and to get me through without paying—because what he indicated to me I did not necessarily need a lawyer because he knew more

---

8. Nothing in DCRA's ruling indicates that the order to repay the $800 to Hodges, plus interest, was premised on a particular violation. We are satisfied that DCRA intended for Hodges to receive restitution if its ruling on any trade practice violation is sustained.

about this type of thing than anybody else. That is what his profession was, Job Protectors.

Which part of this recitation is supposed to establish a material misrepresentation is unclear. Banks allegedly said he was an administrative advocate, but there is nothing in the record to suggest that this was untrue. He is said to have claimed to know a lot about equal opportunity complaints—more than anyone else knows, in fact—but surely such "puffing" is not a violation of the Act.[1] Hodges testified that Banks told him he did not need a lawyer, but there was no evidence that Hodges in fact did need one to file a complaint of racial discrimination in employment. At the very least, the record as to any misrepresentation is opaque and amorphous, and it was therefore especially important for the finder of fact to identify any specific misrepresentation with particularity.

## II.

We recently reiterated in *Cruz v. District of Columbia Dep't of Employment Servs.,* 633 A.2d 66, 70 (D.C.1993) that, in reviewing agency action under the District's Administrative Procedure Act, we inquire

(1) whether the agency has made a finding of fact on each material contested issue of fact; (2) whether substantial evidence of record supports each finding; and (3) whether conclusions legally sufficient to support the decision flow rationally from the findings.

(Citations omitted). In the present case, the first inquiry must, in my view, be answered in the negative, and this precludes any fruitful analysis of the second and third questions.

The ALJ's findings of fact are not supposed to be perfunctory; rather, they must reflect "a meaningful attempt to come to grips with the difficult factual questions raised by this record." *Eilers v. District of Columbia Bureau of Motor Vehicle Servs.,* 583 A.2d 677, 685 (D.C.1990). The only finding made by the ALJ which purports to deal at all with deceptive practices on Banks' part—Finding of Fact No. 2—reads as follows:

During consultation, the Respondent, trading as Job Protectors, Administrative Advocates, represented to Complainant that he was an Administrative Advocate. Respondent informed Complainant that he had a case and would go through the "EEO" process, and put a package together. Complainant, believing Respondent was a lawyer, stated that Respondent made no distinction between himself and that of a lawyer.

(Citations to record omitted). As the majority points out, Hodges testified that he did *not* believe that Banks was a lawyer, and the ALJ's finding to the contrary is without record support. This leaves us with only the ALJ's cryptic comment that, according to Hodges, Banks "made no distinction between himself and that of [sic] a lawyer."

Frankly, I am at a loss to understand what this rather inscrutable phrase was supposed to mean.[2] Perhaps the ALJ was trying to convey the idea that Banks did not tell Hodges that "I am not a lawyer." According to Hodges, however, Banks "indicat[ed] to me I did not necessarily need a lawyer," thus clearly implying that Banks was not a member of that noble calling. Moreover, I know of no authority, and the ALJ cited none, requiring an individual who does the kind of work that lawyers also do to make a declaration of the kind the ALJ seems to have had

---

**1.** Consumer fraud is not amusing. As to this kind of simplistic braggadocio, however—"my dad can whip your dad"—I advert to the librettist's perhaps exaggerated counsel:

If you wish in the world to advance
Your merits you're bound to enhance
You must stir it and stump it
And blow your own trumpet
Or, trust me, you haven't a chance.

WILLIAM GILBERT & ARTHUR SULLIVAN, RUDDIGORE, Act I (1887).

**2.** Exalting the ordinarily humdrum task of construction to a creative art form, the majority attributes to the agency a finding that Banks "misrepresented himself as the functional equivalent of a lawyer." Later, the majority says that the agency found that Banks falsely represented himself to be "an advocate with skills equivalent to those of a lawyer." The problem is that the ALJ never wrote these phrases or anything like them. Moreover, neither the ALJ nor the majority has explained what precisely it was that Banks said that would support such findings.

in mind. Attorneys prepare tax returns, but this does not make it an unlawful or deceptive practice for an employee of H. & R. Block to fail to volunteer that he or she is not a member of the bar.

In Conclusion of Law No. 14, the ALJ concluded:

> Petitioner has established by a preponderance of the evidence that Respondent's use of the title "administrative advocate" and rendering of legal advice misrepresented that his services had a sponsorship, approval, certification, characteristic, and were of a particular standard, or quality when it did not in violation of D.C.Code, sec. 28–3904(a), (b) and (d).

If this Conclusion was designed to be a factual finding, it did not disclose in what way Banks' use of the title "administrative advocate" was deceptive, nor did it identify the "legal advice" which Banks allegedly provided. If the fourteenth legal conclusion added anything to the second finding of fact, it was not very much.

In other words, the ALJ has made almost no substantive findings at all.[3] Even if there is evidence in the record supporting the relief granted by the agency—and that "if" is not an inconsiderable one—the findings were, in my view, altogether inadequate, and effective judicial review has been foreclosed. Accordingly, I would remand the case to the agency with directions to issue findings of fact and conclusions of law which comport with the requirements of the District's Administrative Procedure Act.[4]

---

3. In fact, as my colleagues point out, the ALJ did not even make an explicit finding that Hodges did not get his money back!

4. Banks may very well be in contempt of this court's order in the unauthorized practice case, in which he was enjoined, *inter alia,* from using the term "advocate" in describing himself or his qualifications. *See In re Banks,* 561 A.2d 158, 168 (D.C.1987). If so, then perhaps proceedings should be instituted against Banks for contempt. In my view, however, the injunction is irrelevant to the present case. The CPPA means the same thing vis-a-vis all defendants, and the question whether *Banks has violated it is not affected in any way by the existence of the injunction.*