Michael JONES, Appellant,

v.

Jacqueline HARKNESS, Appellee.

No. 95–FM–538.

District of Columbia Court of Appeals.

Argued March 12, 1998.

Decided April 9, 1998.

Julie Steptoe Lee, Washington, DC, appointed by the court, for appellant.

Sidney R. Bixler, Assistant Corporation Counsel, with whom Jo Anne Robinson, Principal Deputy Corporation Counsel, Robert R. Rigsby, Deputy Corporation Counsel, and Rosalyn Calbert Groce, Director, Policy and Appeals Branch, were on the brief, for appellee.

Before WAGNER, Chief Judge, and TERRY, Associate Judge, and KERN, Senior Judge.

PER CURIAM:

On appeal from his conviction on eight counts of criminal contempt for violating a civil protection order, appellant contends: (1) that the trial court erred in finding he had the requisite wrongful intent to violate the order; and (2) that there was insufficient evidence to find that he willfully violated the order. We affirm.

I.

On January 28, 1994, the Superior Court issued a civil protection order ("CPO") ordering appellant to stay away from the mother of his children, Jacqueline Harkness.[1]  Ms. Harkness filed a Motion to Adjudicate Contempt on July 13, 1994, and an amended petition on September 23, 1994.  In these petitions, she alleged that appellant had violated the CPO.

The trial court held a hearing on Ms. Harkness' petitions on December 15, 16, 28, and 29, 1994.  Ms. Harkness testified that appellant contacted her on a number of occa-

---

1.  The record reflects that although there were references during the hearing to appellee as appellant's "wife," the petition by appellee for the CPO stated that she was related to appellant by "having a child in common."

sions during the time that the CPO issued in January of 1994 was in effect. She described each of the unwanted approaches. Another witness who had been present for some of the contacts, Ms. Joanne Reed, also testified.

Appellant testified on his own behalf. He contended that, although he was aware of the CPO, he was "not conscious" of it when he contacted Ms. Harkness. He explained that he was an "emotional wreck" following their separation, and that, "[u]p until a point ... dealing with [her] was like [he] was a moth attracted to a flame." He sought psychiatric treatment during this time and was prescribed medication, but did not take it.

Dr. Ralph Fawcett, a psychiatrist who had reviewed appellant's medical file, gave expert testimony regarding appellant's psychological condition. He testified that appellant had been suffering from depression at the time he contacted Ms. Harkness in violation of the CPO, a condition that manifested itself through obsessive thoughts and behavior aimed at reconciling with Ms. Harkness. Dr. Fawcett testified that appellant's attempts to contact Ms. Harkness during that time were "directly" caused by his obsessions and were not motivated by disrespect of the court.

Following the hearing, the trial court found appellant guilty of eight of the contempt charges. Specifically, the court found that the government proved beyond a reasonable doubt that appellant initiated contact with Ms. Harkness in violation of the CPO on eight separate occasions, in ways such as blocking her path with his car at a Metro station, throwing rocks at her bedroom window, approaching her in the children's schoolyard, going to the building where she works, and following her to the restroom while in the courthouse awaiting a hearing on the contempt matter.

Regarding appellant's contentions that his behavior was not willful, the trial court noted that the "intent" necessary for a finding of willfulness in the case of criminal contempt based on a violation of a CPO referred to intent "to do the acts which constitute the contempt and not ... [to] affirmatively desire[ ] to violate a Court order." The trial court also noted, based on Dr. Fawcett's testimony, that appellant's psychological condition did not meet the legal requirements for insanity. The court noted that Dr. Fawcett at no time said that appellant could not appreciate the wrongfulness of his conduct or conform his conduct with the requirements of the law. The trial court concluded, based on appellant's actions, that appellant's violation of the CPO had been willful.

## II.

"On appeal of a finding of criminal contempt, we must view the evidence in the light most favorable to sustaining the judgment." *In re Vance,* 697 A.2d 42, 44 (D.C. 1997) (citing *Bethard v. District of Columbia,* 650 A.2d 651, 654 (D.C.1994) (per curiam)). The trial court's findings may not be disturbed "unless they are 'without evidentiary support or plainly wrong.'" *Id.* (quoting *Bethard, supra,* 650 A.2d at 654). To establish criminal contempt, the government must prove beyond a reasonable doubt that the defendant willfully disobeyed a court order, "causing an obstruction of the orderly administration of justice." *Swisher v. United States,* 572 A.2d 85, 89 (D.C.1990) (citing *In re Thompson,* 454 A.2d 1324, 1326 (D.C.1982) (per curiam)).

Appellant contends that the trial court erred in finding that he acted willfully in violating the court order. Specifically, appellant argues that the mere "doing of an act" in violation of a court order is not sufficient evidence to find a willful disobedience of the order. In addition, he argues that, because of Dr. Fawcett's uncontested testimony that appellant's actions were "caused by depression-related obsessions," the evidence presented at trial was insufficient to support a finding of willfulness.

Appellant admitted that, knowing the CPO was in place, he contacted Ms. Harkness in violation of the court order on numerous occasions. As the court noted, appellant deliberately engaged in continuing behavior that violated the court order. From appellant's actions, the court properly inferred wrongful intent. *See Swisher, supra,* 572 A.2d at 89 n. 9 (explaining that willfulness could be inferred from the defendant's failure to appear for trial after having

been warned that his attendance was required); *see also Hager v. District of Columbia Dep't of Consumer and Regulatory Affairs,* 475 A.2d 367, 368 (D.C.1984) ("Generally, [willful] means 'no more than that the person charged with the duty knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law.'") (quoting *Townsend v. United States,* 68 App.D.C. 223, 229, 95 F.2d 352, 358, *cert. denied,* 303 U.S. 664, 58 S.Ct. 830, 82 L.Ed. 1121 (1938)).

As to the testimony of Dr. Fawcett, the trial court concluded that his description of appellant's psychological condition did not meet the legal definition of insanity. This conclusion was not erroneous, since Dr. Fawcett never testified that appellant was unable either to appreciate the wrongfulness of his conduct or to act in such a way as to conform his conduct to the law. *See Bethea v. United States,* 365 A.2d 64 (D.C.1976), *cert. denied,* 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1977). Absent a finding of legal insanity, testimony regarding a defendant's psychological condition is inadmissible to explain the defendant's actions. *See Smith v. United States,* 686 A.2d 537, 549 (D.C.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 115, 139 L.Ed.2d 67 (1997) (citing *Bethea, supra,* 365 A.2d at 85). Thus, the trial court properly concluded that appellant's actions in contacting Ms. Harkness in violation of the CPO were willful.

*Affirmed.*