In re Simon BANKS, Appellant.

Nos. 96–SP–817, 97–SP–1629, 97–SP–1760 to 97–SP–1762, 99–SP–1025, 99–SP–1192.

District of Columbia Court of Appeals.

Argued June 24, 2002.

Decided Aug. 29, 2002.

---

Simon Banks, pro se.

Anthony C. Epstein, Washington, DC, for the Committee on Unauthorized Practice of Law.

John R. Fisher, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, was on the brief, for the United States.

Stuart F. Pierson, filed a brief pro se.

Before WAGNER, Chief Judge, and SCHWELB and FARRELL, Associate Judges.

FARRELL, Associate Judge:

These cumulative appeals challenge in substance an adjudication of civil contempt and a later conviction for criminal contempt both resulting from appellant's disregard of injunctions issued by this court against the unauthorized practice of law. He presents a barrage of arguments why both of those adjudications exceed our authority to regulate his conduct, in particular his business of representing persons before federal and local administrative agencies. We sustain the contempt orders in all respects and uphold as well the order directing appellant to pay partial attorney's fees of members of the Committee on Unauthorized Practice of Law (the "CUPL" or Committee), which sought to enforce the court's prior injunction.

## I. Background

Appellant, hereafter Banks, has never been a member of the Bar of this court or any other court, federal or state, despite graduating from law school in 1975. His confrontations with the CUPL and this

court have spanned nearly three decades. In 1984 and 1985, the CUPL received numerous complaints about Banks and his company, Job Protectors, concerning his use of advertising materials and statements, oral and written, to solicit legal business and to represent persons before federal and local administrative and regulatory agencies. In 1985, Banks and the CUPL reached a settlement agreement whereby, among other things, he would cease advertising the words "former administrative law judge," "esquire" or other words suggesting his membership in the legal profession in soliciting clients for representation before various agencies. When he failed to abide by these conditions, the CUPL sought injunctive and other relief from this court under then Rule 49(b) of the rules of this court.

Following evidentiary hearings in 1987, Senior Judge Gallagher of this court[1] found that Banks "had held himself out to the public as being a qualified member of the District of Columbia Bar by creating, or fostering, the illusion that he is licensed to practice law in the District of Columbia," in violation of Rule 49(b). *In re Banks*, 561 A.2d 158, 163 (D.C.1987) (*Banks I*).[2] Accordingly, the judge enjoined Banks, among other things, from:

(1) Representing any person, other than himself, or any corporation, association, partnership, organization, or other entity in any court in the District of Columbia unless he is a member of the

bar of the court in which such representation takes place;

(2) Using ... any ... term or description which reasonably denotes that [he] is licensed to practice law in the District of Columbia;

(3) Using ... any ... term or description ... which reasonably denotes that [his] former employment as a hearing examiner constitutes a qualification or license to practice law in the District of Columbia; [and]

(4) Using any advertising materials, business cards, firm resumes, personal resumes, firm descriptions, stationery, personalized forms or any other business documents relating to representation of individuals before administrative agencies or courts in this jurisdiction which do not expressly state in a separate paragraph and in one complete sentence at the outset of the document that [he] is "not admitted to the practice of law in the District of Columbia or any other jurisdiction."

*Id.* at 168. In 1989, this court denied Banks's request for rehearing en banc. *See Banks I*, 561 A.2d at 158 (caption).

### A. The Civil Contempt

Despite this injunction, Banks continued to misrepresent himself as the functional equivalent of a lawyer. *See, e.g., Banks v. District of Columbia Dep't of Consumer & Regulatory Affairs*, 634 A.2d 433, 438

---

1. Judge Gallagher was designated to conduct the proceedings pursuant to what is now D.C.App. R. 49(e)(3) (2002).

2. "Such misimpression," Judge Gallagher found, "has been generated and fostered by respondent through various media, including advertisements in the yellow pages, newspapers, and on the radio, and representations made in resumes, business cards, stationery, and other verbal and written descriptions of his business." 561 A.2d at 163. Although Banks's practice appeared to be substantially confined to appearances before federal and District administrative agencies, he had misrepresented that he "could handle cases in a court of law all the way to the Supreme Court." *Id.* at 162. Moreover, the judge found, Banks had "fail[ed] to disclose his status with respect to Bar membership to prospective and actual clients"; his " 'disclosure statement,' as a practical matter, did not actually alert most of his clients that he was not licensed to practice law in the District of Columbia." *Id.* at 163.

(D.C.1993) (*Banks II* ). In 1992, therefore, the CUPL initiated civil contempt proceedings against him for alleged violations of the 1987 injunctive order. In May 1994, the Honorable Richard A. Levie of the Superior Court, designated a judge of this court pursuant to D.C.Code § 11–707(a) (2001), held an evidentiary hearing on the contempt petition. During this hearing, the CUPL presented substantial testimonial (eleven witnesses) and documentary evidence (forty-one pieces) that Banks had failed to comply with the 1987 injunction. The evidence revealed, *inter alia,* that Banks told potential clients he was an attorney, even at times following his signature with "Esq." or pointing to a license on the wall that indicated he was an attorney; that he used stationery with printed terms such as "Representation by Former Administrative Law Judges" and "Nationwide Representation" without the required disclaimers;[3] and that he had advertised in the *Federal Times,* in the *American Weekly,* and on local radio that he was a former administrative law judge. Banks himself did not attend the hearing, although he had been made aware of the date, time, and place.

In January 1995, Judge Levie issued lengthy findings of fact and concluded that Banks had "flagrantly, intentionally, repeatedly and contumaciously violated virtually every provision of the Court's 1987 injunction" (Order # 18). Indeed, the judge explained, "[t]he only difference between this Court's findings and those of Judge Gallagher is the passage of time." Banks "continued to use terms ... calculated to mislead ... unsuspecting members of the public unlearned in the law";

he "fail[ed] to include the required disclaimer in the required placement on all his business papers"; and, among other similar misrepresentations, he "continu[ed] to refer to himself as going to court and [had] his secretary indicate that he was in court when he was not available to callers." Consequently, Judge Levie decided that "an expanded and stricter injunction is warranted," and enjoined Banks from performing any of fourteen separate activities, among which are:

\* \* \* \*

(3) Using such terms to describe himself or his qualifications as "administrative law judge[ ]," "administrative trial advocate," any abbreviation of the foregoing terms, or any other similar term or description also which reasonably denotes that [Banks's] former employment as a hearing examiner constitutes a qualification or license to practice law in the District of Columbia;

(4) Describing his business as providing legal representation in any field, describing his professional or business activity as going to, or acting in court, or describing his business as providing nationwide representation; ...

(6) Using any advertising materials, business cards, firm resumes, personal resumes, firm descriptions, station[e]ry, personalized forms or any other business documents relating to representation of individuals before administrative agencies or courts in this jurisdiction which do not expressly state:

**THIS IS TO ADVISE THAT SIMON BANKS, AND SIMON BANKS T/A JOB PROTECTORS, IS NOT AD-**

---

**3.** During oral argument in this court, Banks asserted several times that his retainer agreements, disclosure statements and other business papers contained all of the proper disclaimers required by the 1987 injunction. It appears from the record that some of these documents contained only a portion of the required language, leading Judge Levie to determine that Banks had "consistently fail[ed] to comply" with the injunction because the documents either included information prohibited by the 1987 injunction or failed to include all of the required disclaimers.

**MITTED, AND HAS NEVER BEEN ADMITTED TO PRACTICE LAW IN THE DISTRICT OF CO-LUMBIA, OR ANY OTHER JURIS-DICTION. HE IS NOT AUTHO-RIZED TO REPRESENT ANY PERSON OR ENTITY BEFORE ANY COURT IN THE DISTRICT OF COLUMBIA. HE IS NOT AU-THORIZED TO GIVE OPINIONS CONCERNING ANY PERSON'S LEGAL RIGHTS.**

This statement shall be printed, in all instances, in bold-face, underscored, in all capital letters. It shall be printed at the beginning of all documents not signed by customers in a separate paragraph in typeface no smaller than the largest typeface of the remainder of the document. With respect [to] each document that a customer signs, this statement shall appear at the beginning, in a separate paragraph, in typeface no smaller than the largest typeface of the remainder of the document; and the customer shall initial each line and then sign immediately below the statement indicating the actual date of execution;

(7) Continuing to represent any client, person or entity presently being represented without giving such person or entity prompt notice of [Banks's] lack of admission to the District of Columbia Bar, and without providing the notice required in paragraph (6) above and obtaining from such person or entity an initialed, signed and dated acknowledgment of that notice, . . .

(13) Otherwise engaging in any manner in the practice of law in the District of Columbia, as that term is defined in [Rule 49(b)(3)], or in any conduct that holds Respondent out as authorized or qualified to practice law in the District of Columbia, or in any other conduct prohibited by [Rule 49(b)]; and

(14) Representing any person, other than himself, or any corporation, association, partnership, organization or other entity before any federal agency by relying exclusively on [Rule 49(c)(4)] as the basis for such representative capacity.

In regard to paragraph (14), Judge Levie withdrew Banks's privilege to use Rule 49(c)(4) "as the basis to appear before any federal agency,"[4] but added this qualification: "Any such federal agency may permit [Banks] to practice before it, so long as the agency rules do not rely exclusively on Rule 49(c)(4) as the basis for an individual to represent persons before it." The judge expressly did not address practice by Banks before regulatory agencies of the District of Columbia, since at the time there was "no exception in Rule 49 [for] practice before District of Columbia agencies by persons not admitted to practice law in the District of Columbia."

Within Order #18, Judge Levie also permitted members of the CUPL to recover $63,997.85 in attorney's fees and costs that related to the adjudication of contempt. We discuss the propriety of that award in Part II. C., *infra.*

### B. The Criminal Contempt

On February 7, 1996, the Office of the United States Attorney initiated criminal contempt proceedings against Banks for violations of the 1995 injunction. Desig-

---

**4.** At the time, Rule 49(c)(4) stated:

Nothing herein shall prohibit any attorney from practicing before any department, commission, or agency of the United States to the extent that such practice is authorized by any rule or regulation of any such department, commission or agency, provided the person is not otherwise regularly engaged in the practice of law in the District of Columbia or is not in any manner, except as permitted by the license granted by such department, commission or agency, holding out as authorized or qualified to practice law in the District of Columbia without having become an enrolled active member of the Bar of this court.

nated again to handle the proceedings, Judge Levie issued an order to show cause presenting six counts of alleged violations of Order # 18.

Counts One and Two alleged that on March 26 and April 2, 1995, respectively, Banks willfully disobeyed paragraphs (3) and (6) of Order # 18 by placing advertisements in the *Washington Post Magazine* that described him as a former administrative law judge without the statement required by paragraph (6). Count Three alleged that on April 24, 1995, Banks willfully disobeyed paragraphs (3), (4) and (6) of Order # 18 by placing an advertisement in the *Federal Times* describing himself as a former administrative law judge and stating that he provided nationwide representation, without the statement required by paragraph (6). According to Count Four, on April 7, 1995, Banks sent to the *Federal Times* a letter printed on letterhead stationery that violated Order # 18 in the same fashion. Count Five alleged that, while representing Stephen Spencer between January 13, 1995, and January 6, 1996, Banks did not comply with paragraph (7). And Count Six charged that on December 4, 1995, he violated paragraphs (3), (4), (6) and (7) by describing himself as a former administrative law judge, stating that he provided nationwide representation, and not obtaining the initials of his client, Deborah Gudger, acknowledging the disclaimer while he represented her before an administrative agency.

Following a non-jury trial, Judge Levie found Banks guilty of criminal contempt of court for Counts One, Two, Three, Four, and Six, and not guilty of Count Five. In subsequently denying his motion for release pending sentence, the judge stated that this conduct amounted to "conscious actions taken by [Banks] to ignore the Court's order and to deliberately … foster to the public the impression that he was an attorney and/or a former judge."

Judge Levie then sentenced Banks to concurrent prison terms of 178 days, which he suspended in favor of five years' probation on conditions that included compliance with the injunction.

In August 1997, after a hearing, the judge revoked the probation on finding repeated violations of the conditions and sentenced Banks to 175 days in prison, suspending execution of all but 21 days in favor of renewed probation. As a condition of this probation, Banks agreed to cease representing, or in any manner participating on behalf of, clients before any federal, District of Columbia, or state administrative or regulatory agency. Banks signed the agreement indicating his consent.

## II. Discussion

Although they should not need restating, Banks's arguments oblige us at the outset to repeat certain basic principles. "This court has the 'inherent and exclusive authority to define and regulate the practice of law in the District of Columbia.'" *Banks II*, 634 A.2d at 436 (quoting *Brookens v. Committee on Unauthorized Practice of Law*, 538 A.2d 1120, 1125 (D.C.1988), and citing D.C.Code § 11–2501 *et seq.*). The court "also exercises some [but not exclusive] authority over the unauthorized practice of law by nonlawyers…." *Banks II*, 634 A.2d at 437. Thus, we have "jurisdiction to review and enjoin" the activities of nonlawyers which constitute practicing law in the District of Columbia. *In re Amalgamated Dev. Co.*, 375 A.2d 494, 498 (D.C.1977); *see* D.C.App. R. 49(a) (2002) ("No person shall engage in the practice of law in the District of Columbia or in any manner hold out as authorized or competent to practice law in the District of Columbia unless enrolled as an active member of the District of Columbia Bar, except as otherwise permitted by these Rules."); D.C.App. R. 49(e)(2) ("Violations of the provisions of

this Rule 49 shall be punishable by the Court of Appeals as contempt and/or subject to injunctive relief.").

Despite this authority, Banks invokes a variety of constitutional principles to challenge nearly every aspect of the court's and the CUPL's assertion of jurisdiction over him since the mid–1980's. The primary objects of his attack, of course, are the order of civil contempt and injunction issued by Judge Levie in 1995 and the subsequent conviction of criminal contempt by the same judge in 1996. We find no reason to disturb either the civil or the criminal contempt determinations and hold that his challenge to the revocation of his probation is moot.

### A. The Civil Contempt

#### 1.

■ By attacking the 1995 contempt order, Banks in reality challenges the provisions of Judge Gallagher's 1987 injunction. The main prohibitions of the 1995 injunction were already present in the 1987 injunction, such as the prohibition against use of (a) the term " 'administrative law judge' ... or any other similar term or description ... reasonably denot[ing] that [Banks] is licensed to practice law in the District of Columbia"; and (b) any materials that do not expressly state that he "is 'not admitted to the practice of law in the District of Columbia or any other jurisdiction.' " The 1995 injunction did not substantively expand the 1987 injunction. It clarified its scope and added provisions to prohibit specific conduct Banks engaged in between 1987 and 1995 that already violated the more general prohibitions of the earlier injunction.[5] Judge Levie found

that the restrictions added in 1995 "are warranted to deal with [Banks's] conduct since the 1987 Injunction, *which conduct violates the 1987 Injunction*" (emphasis added).

■ Banks's challenge to the civil contempt thus fails initially because he may not relitigate the propriety of the 1987 injunction. By denying *en banc* review, this court as a body declined to reconsider the correctness of Judge Gallagher's order, thus making *res judicata* all claims Banks then raised or could have raised in opposition to the order. *See, e.g., Watergate West, Inc. v. Barclays Bank, S.A.,* 759 A.2d 169, 179 (D.C.2000). Moreover, the separate but related doctrine of collateral estoppel erects a similar bar. "Collateral estoppel, or issue preclusion, renders conclusive in the same or a subsequent action determination of an issue of fact or law when (1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum." *Davis v. Davis,* 663 A.2d 499, 501 (D.C. 1995) (citation and quotation marks omitted). Under these principles, Banks's manifold challenges to the civil contempt order, including his broad claim that this court and Judge Levie have unlawfully restricted his representation of clients before administrative agencies, come too late.

#### 2.

Even if the 1995 injunction were open to challenge, Banks has shown neither that Judge Levie lacked jurisdiction to enter it

---

5. The prohibitions contained in the 1987 injunction and supplemented by the 1995 injunction include, for example, paragraphs 6 and 7 which prohibit Banks from otherwise engaging in conduct calculated or intended to mislead, and paragraph 11 which prohibits him from "[o]therwise engaging in any manner in the practice of law in the District of Columbia ... or in any conduct that holds respondent out as authorized or qualified to practice law in the District of Columbia."

nor that he erred in the conduct of the civil contempt proceedings. Banks does not seriously question the sufficiency of the evidence establishing his repeated and flagrant violation of the terms of the 1987 injunction. Rather, as indicated, his main argument is that this court lacks jurisdiction to prevent him from representing clients before federal and District of Columbia administrative agencies. Banks misunderstands the limitations that have been imposed on his business.

### (a)

■ With respect to federal agencies, neither the 1995 nor the 1987 injunction prevents Banks from appearing on behalf of persons before any federal agency that permits non-lawyer representation. Indeed, Judge Levie recognized that this court could not issue such a prohibition. *See Sperry v. Florida,* 373 U.S. 379, 385, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963) (state law incompatible with federal law authorizing non-lawyer practice before federal agencies is preempted). Rather, by its terms and as explained by Judge Levie, the 1995 injunction merely precludes Banks from relying on Rule 49 of this court's rules—specifically Rule 49(c)(4) as it existed in 1995—as an independent and sufficient basis for practicing law before federal agencies.

■ Neither in its 1995 form nor in its present embodiment as Rule 49(c)(2) is Rule 49's reference to practice before federal agencies an affirmative grant of authority to practice law. Instead, the language is just what it purports to be—an exception for conduct that otherwise would constitute the unauthorized practice of law. That exception is predicated (in both versions) on federal law or the federal agency itself having authorized an unlicensed person to practice before it.[6] Thus, the restrictions on Banks's business are consistent with, and complementary to, the federal government's power to authorize non-lawyers to practice before federal agencies. That power does not oblige this court to allow persons in the District of Columbia to provide false or misleading information about their authority to practice law in any context, including appearances before federal administrative or regulatory agencies. *See Sperry,* 373 U.S. at 403, 83 S.Ct. 1322 (a state court "maintains control over the practice of law within its [jurisdiction] except to the limited extent necessary for the accomplishment of federal objectives").[7] The 1995 injunction simply requires Banks to provide accurate information to prospective clients about his qualifications to practice before administrative agencies and prohibits him from providing information that is false or misleading in regard to his authority to practice law. In doing so, the injunction is well within the court's " 'inherent and exclusive authority to define and regulate the practice of law in the District of Columbia.' " *Banks II,* 634 A.2d at 436 (quoting *Brookens,* 538 A.2d at 1125).

### (b)

■ Banks further argues that the 1995 injunction unlawfully prohibits him from

---

**6.** Banks has not claimed that he is registered to practice before any federal agency, or even that any of the federal agencies before which he wishes to practice have enacted regulations governing the practice of law by non-lawyers. *See In re Amalgamated Dev. Co.,* 375 A.2d at 497 (distinguishing *Sperry* and holding that "when a petitioner is not registered [to practice] in the [U.S.] Patent Office a state does not interfere with any federal purpose in subjecting the practitioner to its own licensing regulations and is free to do so").

**7.** Of course, no federal statute, regulation, or order authorizes or condones false or misleading statements to prospective clients, and Banks makes no claim that any federal law or order authorizes any conduct prohibited by the 1995 (or 1987) injunction.

practicing before District of Columbia administrative agencies. The argument rests on the fact that, although Judge Levie stated he was not "address[ing] the issue of practice before District of Columbia agencies," paragraph 13 of the injunction prohibits Banks from "[o]therwise engaging *in any manner in the practice of law in the District of Columbia*" (emphasis added). And, although the then-current version of Rule 49 did not on its face encompass appearances before administrative agencies, *see* D.C.App. R. 49(b) (1995), the rule now specifically defines the "practice of law" to include "[p]reparing any claims, demands, or pleadings of any kind, or any written documents containing legal argument or interpretation of law, for filing in any court, administrative agency or other tribunal," D.C.App. R. 49(b)(2)(D) (2002).

Banks's argument is unpersuasive. He has not demonstrated that the injunction barred him from practicing before District of Columbia agencies, rather than simply from misrepresenting his qualifications to practice before those agencies. Judge Levie did not purport to rule one way or the other on whether, or on what conditions, Banks could practice before local agencies as a non-lawyer. Furthermore, Banks has not alleged that in the two and a half years following the 1995 injunction,

Judge Levie's order in fact operated to bar his administrative practice, *i.e.*, that any agency rebuffed his attempt to register because of the injunction. That is significant because, from August 1997 through the end of his probation,[8] his inability to practice before local administrative agencies stemmed from his own voluntary agreement, as a condition of renewed probation, to cease representing anyone before federal *or* District of Columbia agencies. As for his *future* ability to practice before local agencies as a non-lawyer, Banks's conduct will be governed by the current Rule 49 which, as an exception, permits a non-lawyer to "[p]rovid[e] legal services to members of the public solely before a department or agency of the District of Columbia government" so long as, among other things, "[s]uch representation is authorized by statute, or the department or agency has authorized it by rule and undertaken to regulate it." *See* D.C.App. R. 49(c)(5) (2002). The 1995 injunction itself thus poses no barrier to Banks's practicing before local agencies that allow him to do so and regulate that practice.[9]

**3.**

■■■■■ We now consider, and reject with only brief discussion, the array of additional challenges that Banks makes to

---

**8.** The United States informs us that Banks's probation expired on August 27, 2001. See Part B, *infra,* at p. 1003.

**9.** Despite Banks's protestations, this court's *Brookens* decision does not prevent the court or the CUPL from regulating non-lawyer conduct before local administrative agencies. In that case we determined that the District of Columbia Rental Accommodations Office did not act *ultra vires* in allowing nonmembers to represent a party at an administrative proceeding, explaining that former D.C.Code § 1–1509(b) (2001) and its legislative history allowed for the possibility of lay representation before administrative agencies. 538 A.2d at 1127. Because Rule 49 at that time did not

address practice before administrative agencies, we refrained from determining whether "in light of this court's inherent power to define and regulate the practice of law, a particular agency has the authority to adopt regulations permitting lay representation." *Id.* Declining to answer that question, we stated that, "[w]hile it is clear that this court is empowered to define the practice of law so that it either excludes or includes lay representation before agencies, it is also true that such an undertaking implicates important public policy questions," and we thus left the question to our court "in its administrative capacity." *Id.* The court later answered this question by including such practices within Rule 49.

the civil contempt order and injunction. *First,* he appears to argue he was denied the right to a jury trial (not differentiating in this respect between the civil and criminal contempt adjudications). Neither the Constitution, *see Shillitani v. United States,* 384 U.S. 364, 370–71, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966), nor any statute, *see* D.C.Code §§ 11–741 and 16–705 (2001), entitled him to a jury trial in a civil contempt proceeding.[10] *Second,* Banks had no First Amendment right to engage in "commercial speech" calculated to deceive or mislead prospective clients by misrepresenting his qualifications. *See generally Wood v. United States,* 498 A.2d 1140, 1143 (D.C.1985) (citing *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980)). *Third,* regarding his claim that the CUPL selectively enforced the court's rule against unauthorized practice of law against him, he shows no instance in which the Committee has failed to pursue civil contempt against a person, assuming one exists, who persistently and flagrantly violated an injunction against unauthorized practice for over a decade. *Fourth,* his claims of invasion of privacy and defamation against individual members of the CUPL have no bearing on the validity of the 1995 injunction and are wholly unsubstantiated. In any event, they collide with the absolute immunity for damages conferred on the Committee and its members. *See Simons v. Bellinger,* 207 U.S.App. D.C. 24, 28, 643 F.2d 774, 778 (1980). *Fifth,* Banks's complaint that the CUPL presented to the D.C. Rental Housing Commission its views on proposed rules concerning practice by non-lawyers before that agency, besides again having no relation to the 1995 injunction, is baseless. The Committee's experience in policing unauthorized practice is plainly of value to an agency engaged in regulating practice before it. Nothing in its charter prohibited the CUPL from communicating those views.[11] And *sixth,* his claim that this court unconstitutionally appointed Judge Levie to adjudicate the contempt proceeding in violation of U.S. Const. art. I, § 8, cl. 17, which concerns Congress's plenary authority over the District, is meritless. Judge Levie was assigned to preside over the contempt proceeding pursuant to D.C.Code § 11–707(a), enacted by Congress in the exercise of its constitutional authority. *See* District of Columbia Court Reorganization Act of 1970, § 11–707(a), 84 Stat. 479–80, Pub.L. No. 91–358, title I, ch. 7, subch. I.

## B. The Criminal Contempt

Banks spends less time and energy attacking the criminal contempt conviction, but nonetheless sees it as somehow the poisoned fruit of this court's and the CUPL's longstanding interference with his business of providing legal representation. His individual arguments have no merit.

 After being found in contempt for violating the court's 1995 injunction, Banks could not violate that order with impunity. "[W]e demand compliance with court orders—subject to sanction for contempt— until they are reversed on appeal or otherwise are modified by motion...." *Kam-*

---

10. Even if Banks had possessed such a right, he waived it when he failed to appear for the civil contempt hearing despite knowledge of the date, time, and place. *See* Super. Ct. Civ. R. 38–II.

11. Banks appears to argue that the injunctions, and perhaps the prosecution for criminal contempt, violated the Commerce Clause of the Constitution. Art. I, § 8, cl. 3. But the fact that he aspires to provide "nationwide service" does not exempt him from the commands of Rule 49. *See Leis v. Flynt,* 439 U.S. 438, 443, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979) ("There is no right of federal origin that permits [out-of-state] lawyers to appear in state courts without meeting that State's bar admission requirements.").

*merman v. Kammerman,* 543 A.2d 794, 798–99 (D.C.1988). "Even if we assume—solely for the sake of argument—that [the 1995 injunction was] invalid, appellant lawfully may be adjudged guilty of criminal contempt for failure to comply with it." *In re Marshall,* 445 A.2d 5, 7 (D.C.1982); *see Walker v. City of Birmingham,* 388 U.S. 307, 320–21, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); *United States v. United Mine Workers,* 330 U.S. 258, 294, 67 S.Ct. 677, 91 L.Ed. 884 (1947) ("[U]ntil [the court's] decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision[s] are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.") (quoting *Howat v. Kansas,* 258 U.S. 181, 190, 42 S.Ct. 277, 66 L.Ed. 550 (1922)).[12]

■ Contrary to Banks's argument, therefore, Judge Levie was authorized to find him in criminal contempt for violating the 1995 injunction. This court, or a single judge thereof, may use the contempt power "to punish for disobedience of an order," D.C.Code § 11–741(a), and (as pointed out) a judge of the Superior Court may be designated to serve as a judge of this Court. D.C.Code § 11–707(a). Hence, we have "upheld ... procedurally similar finding[s] of criminal contempt in which a single Superior Court judge, sitting by designation, sentenced a respondent" for violating an order of this court precluding him from practicing law in the District of Columbia. *In re Richardson,* 759 A.2d 649, 651 (D.C.2000). *See also In re Burton,* 614 A.2d 46, 47 & n. 1 (D.C.1992). Although such contempt proceedings often are initiated by the CUPL, the fact that someone else (in this case the United States Attorney) "initiated the request for a show cause order, and prosecuted the contempt charge at the court's behest, can have no effect upon the jurisdiction of the court to hold respondent in contempt." *Burton,* 614 A.2d at 49. *See also* D.C.App. R. 49(d)(3)(E)(v) (2002), formerly 49(e)(5)(d) ("The Committee may refer cases to the Office of the United States Attorney for investigation and possible prosecution.").

■ Furthermore, Banks was not entitled to a jury trial of the criminal contempt. Judge Levie imposed concurrent sentences of 178 days for each of the five contempts, thus leaving the sentence below the jury-trial threshold established by either the Sixth Amendment or then D.C.Code § 16–705(b)(1). *See In re Richardson,* 759 A.2d at 652; *Brookens,* 538 A.2d at 1122–23; *In re Evans,* 411 A.2d 984, 991–92 (D.C.1980).[13]

■ The government also presented sufficient evidence to warrant a finding of criminal contempt.[14] "A person who [willfully] disobeys a court order may be adjudicated in contempt." *In re Richardson,* 759 A.2d at 654 (citing *In re Kirk,* 413 A.2d 928, 930 (D.C.1980) (per curiam)).

**12.** *See also In re Scott,* 517 A.2d 310, 312 (D.C.1986) ("If the trial judge has jurisdiction over the subject matter and the parties before it, an individual has an obligation to comply with an order issued by the court or to seek to have the order vacated."). As previously explained, the court undeniably had jurisdiction over Banks and jurisdiction to issue the 1995 injunction.

**13.** Indeed, Judge Levie gave advance notice that he would impose no sentence on any one count exceeding six months' imprisonment or a fine of $1,000. *See* D.C.Code § 16–705(b)(1).

**14.** We conduct our customary standard of review in these types of cases. *See Jones v. Harkness,* 709 A.2d 722, 723 (D.C.1998) ("On appeal of a finding of criminal contempt, we must view the evidence in the light most favorable to sustaining the judgment.") (quoting *In re Vance,* 697 A.2d 42, 44 (D.C.1997)). "The trial court's findings may not be disturbed unless they are without evidentiary support or plainly wrong." 709 A.2d at 723.

"[T]he offense of criminal contempt requires proof of a contemptuous act and a wrongful state of mind." *Mabry v. Demery*, 707 A.2d 49, 51 (D.C.1998). "A contemptuous act may be conduct that interferes with the orderly administration of justice or it may be 'disobedience or resistance' to court orders through actions committed outside the presence of the court." *Grant v. United States*, 734 A.2d 174, 176 (D.C.1999). Counts One and Two concerned advertisements in the *Washington Post Magazine* in which, as Judge Levie found beyond a reasonable doubt, Banks had referred to himself as a former administrative law judge. As to Counts Three and Four, which dealt with an advertisement in the *Federal Times*, Judge Levie found that the advertisement contained a similar representation. And regarding Count Six, which concerned Banks's inducement of a Ms. Gudger to believe "she was being represented by an attorney," the judge found the witness's mistaken belief credible in the circumstances. In each of these instances Banks violated the injunction, and the evidence supports the judge's finding of willfulness.[15]

▮▮▮ Banks also makes unfounded allegations that Judge Levie was biased against him. He does not proffer an "extrajudicial source" for the alleged bias, and it appears that his claim is based solely on the judge's handling of the court proceedings. But "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.*[16]

▮▮▮ Finally, Banks contests the revocation of his probation and Judge Levie's denial of his request for a sentence modification. These claims, however, are moot because Banks's probation expired on August 27, 2001, and he has long since served the twenty-one days of weekend incarceration Judge Levie ordered. *See Marshall v. District of Columbia*, 498 A.2d 190, 192 (D.C.1985); *Smith v. United States*, 454 A.2d 1354, 1356 (D.C.1983).

## C. Attorney's Fees

### 1. Background

As pointed out, the 1995 civil contempt arose from a petition filed by the CUPL. Members of the Committee, primarily the Chair at the time, Stuart F. Pierson, then prosecuted the matter before Judge Levie. Following the hearing and contempt adjudication, the judge took up the CUPL's request for attorney's fees and costs asso-

15. Banks's ongoing dispute with court officials over preparation of the transcript of the criminal proceedings affords him no grounds for relief. In November 2001, the government successfully sought postponement of oral argument in this court to enable Banks to receive all relevant transcripts at public expense. Those transcripts were prepared and forwarded to Banks, and this court permitted supplemental briefing on the basis of them. We, therefore, consider these claims moot.

16. To the extent Banks argues that the criminal contempt prosecution was the result of race- or gender-based discrimination, or a violation of equal protection, the arguments have no merit. A presumption of regularity supports prosecutorial decisions, *United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (citation and internal quotation marks omitted), and Banks has not begun to make the showing necessary to dispel that presumption. *See id.* at 465, 116 S.Ct. 1480; *Wayte v. United States*, 470 U.S. 598, 610, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); *Fedorov v. United States*, 600 A.2d 370, 377 (D.C.1991) (en banc).

ciated with initiating, and litigating, the petition. Based upon his finding that Banks's "violations of the 1987 Injunction have been willful, intentional, repeated and flagrant," Judge Levie awarded Committee members partial but substantial attorney's fees and costs to be paid by Banks. Judge Levie limited the award to "efforts ... spent directly on the instant [contempt] proceeding and the litigation related to it." He also noted that Banks, although given the opportunity, had not taken "issue with any of the specific fees or costs requested by the CUP[L]," [17] but challenged the authority of the court to award any fees to the CUPL or its members.

When the matter came before this division, we ordered supplemental briefing on the propriety of an award of attorney's fees in this context. In making the award, Judge Levie had relied on *Link v. District of Columbia*, 650 A.2d 929 (D.C.1994), which adopted and applied the principle that a civil "contemnor [may be ordered] to pay the aggrieved party's counsel fees [even] in the absence of a finding that the contemptuous conduct was willful." *Id.* at 930. In keeping with authority elsewhere, the court there held that "the remedial authority of a court of equity following a violation of that court's decree extends to the award of counsel fees occasioned by the contemnor's noncompliance." *Id.* at 932. In *Link*, however, the "aggrieved party" was a *private* litigant who had "been obliged to expend time and effort

securing ... her court-ordered rights" conferred by a settlement agreement between herself and the District of Columbia government. *Id.* In light of the differences between a private litigant and the CUPL, we asked the parties to address the following issue:

What authority permitted the designated judge, after adjudicating appellant in civil contempt in 1995, to order him to pay the [attorney's fees] and costs of the Committee on Unauthorized Practice of Law and/or its members? *See, e.g.,* D.C.App. R. 49(d) (2000) ("The court shall appoint a standing committee known as the Committee on Unauthorized Practice of Law"); [*Simons,* 207 U.S.App. D.C. at 31, 643 F.2d at 781] (describing the Committee members as "a bona fide arm of the Court of Appeals"); [207 U.S.App. D.C.] at 37, 643 F.2d at 787 (McKinnon, J., concurring) ("[T]he Committee members must be considered to be officers of the Court in carrying out their assigned responsibilities, ... in ... [a] capacity that [is] principally judicial.").

## 2. Discussion

■ The issue before us is whether, upon adjudging a person in civil contempt for disobeying an injunction against the unauthorized practice of law, this court may order the person to pay attorney's fees of members of the court's own instrumentality, the CUPL.[18] Banks argues that the issue implicates his due process right

---

17. Judge Levie noted that he had carefully considered "the amounts of time claimed and the quality of the products produced. For many months, the Court has been required to review memoranda submitted by the parties that is measured in feet or, perhaps, more accurately, in yards." He awarded $59,372.85 to attorney Pierson, $2,125.00 to Warren Fitch, and $2,500.00 to Linda Hoffman.

18. Because Judge Levie relied on *Link* in assessing attorney's fees and costs, we do not consider whether the award could also have been made under the "bad faith" exception to the American Rule. *See Trilon Plaza Co. v. Allstate Leasing Corp.*, 399 A.2d 34, 37 (D.C. 1979); *Alyeska Pipeline Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). *See also Copeland v. Martinez*, 195 U.S.App. D.C. 399, 402–03, 603 F.2d 981, 984–85 (1979) (describing the punitive nature of fees awarded in this context).

to "an impartial and disinterested tribunal in both civil and criminal cases," *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980), by asking whether the court, in effect, may fund activities of its own regulators from the pockets of persons haled before it on charges of unauthorized practice of law. At a minimum, he says, the question is whether such court-ordered reimbursement to "itself" creates "an appearance of bias or prejudice [in favor of finding contempt] sufficient to permit the average citizen reasonably to question the [court's] impartiality." *York v. United States*, 785 A.2d 651, 655 (D.C.2001) (citing the CODE OF JUDICIAL CONDUCT FOR THE DISTRICT OF COLUMBIA COURTS, Canon 3 (1995)).

Answering these questions requires us to distinguish between two roles the CUPL performs. The Committee, made up of volunteer members of the Bar and one non-member, was established by the court to carry out the provisions of Rule 49 prohibiting unauthorized practice. *See* D.C.App. R. 49(d). By far, most of the Committee's work consists of investigating complaints of unauthorized practice of law and, in the first place, deciding whether to hold "formal proceedings" on the matter, and then conducting those proceedings if warranted. D.C.App. R. 49(d)(3)(C) & (D). Such proceedings are akin to a trial in that, represented by counsel, the respondent may testify and, with leave of the committee, call witnesses and conduct limited cross-examination, although formal rules of evidence do not apply. D.C.App. R. 49(d)(3)(D)(iii). Thereafter the Committee makes findings and may take one of several actions, including a "formal agreement, consent order, or both" if the respondent agrees to "cease and desist" from actions appearing to be unauthorized prac-

tice. It may also require restitution to the clients of fees obtained by the respondent. D.C.App. R. 49(d)(3)(E)(iii). As a last step, but only on completion of formal proceedings, it may initiate proceedings in this court to enforce Rule 49 and may refer cases to the executive branch for possible criminal prosecution. D.C.App. R. 49(d)(3)(E)(iv) & (v).

When acting in this capacity, it has been correctly said that "[t]he Committee members' work is functionally comparable to the work of judges," as they "perform a function which traditionally belongs to the judiciary." *Simons*, 207 U.S.App. D.C. at 30, 643 F.2d at 780; *see also* 207 U.S.App. D.C. at 37, 643 F.2d at 787 (MacKinnon, J., concurring). "Indeed, were it not for the Committee, judges themselves might be forced to engage in the sort of inquiries which [the Committee conducts]." 207 U.S.App. D.C. at 31, 643 F.2d at 781. In our view, an assessment of attorney's fees against a contemnor for work done by CUPL members in formal proceedings that led to a contempt petition would pose an unacceptable risk to the appearance of impartiality by the Committee in conducting its "near-judicial ... work." *Id.* Strictly—but importantly—as a matter of appearance, members could be reasonably thought to have an incentive "not to hold the balance nice, clear and true," *Ward v. Village of Monroeville*, 409 U.S. 57, 60, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972) (quoting *Tumey v. Ohio*, 273 U.S. 510, 532, 47 S.Ct. 437, 71 L.Ed. 749 (1927)), by pursuing enforcement proceedings to recoup some of the cost of their time and efforts. And that is so even though, in theory if not in practice, the members may be compensated by the court out of its own funds. *See* D.C.App. R. 49(d)(2).[19] In evident recognition of

---

19. "The members of the Committee shall receive such compensation ... as the court may approve." Rule 49(d)(2). Historically, how-

ever, CUPL members have volunteered their time as a matter of public service and have not been compensated for the work.

this appearance of conflicting interests, the CUPL did not request, and was not awarded, fees for informal or formal proceedings it had conducted in regard to Banks, and Judge Levie awarded the members fees only for efforts spent "directly on the instant [contempt] proceeding and the litigation related to it."

In instituting and litigating the civil contempt proceedings, by contrast, the CUPL acted in what amounted to a prosecutorial capacity, for in that role its members "[were] not a judge. [They] perform[ed] no judicial or quasi-judicial functions. [They] hear[d] no witnesses and rule[d] on no disputed factual or legal questions." *Marshall,* 446 U.S. at 247, 100 S.Ct. 1610. In effect, they were the "special counsel" which the court may appoint under Rule 49(e)(1)(B) "to represent the Committee and to present the Committee's proof and argument." [20] Of persons acting in that kind of role the Supreme Court has stated: "The rigid [conflict] requirements of *Tumey* and *Ward,* designed for officials performing judicial or quasi-judicial functions, are not applicable to those acting in a prosecutorial or plaintiff-like capacity." *Marshall,* 446 U.S. at 248, 100 S.Ct. 1610.

Any perceived incentive the CUPL might have to initiate a civil contempt proceeding to earn attorney's fees in *that* proceeding is vanishingly—indeed, absurdly—small. Beyond the fact that the great bulk of the members' time relates to the CUPL's own proceedings (uncompensated in practice), it is frivolous to suggest that the members *need* the litigation of a civil contempt proceeding and the prospect of a fee award from a contemnor to supplement

their income as lawyers. Consequently, the only issue we need consider is whether the *court itself,* as an appearance matter, can be said to be biased in favor of contempt and a resultant fee award to allow it to defray costs that, at least in some cases, the court might otherwise expend. *See* D.C.App. R. 49(d)(2).

Here also, however, "the influence alleged to impose bias" is, in our view, too "remote" to be cognizable. *Marshall,* 446 U.S. at 250, 100 S.Ct. 1610. As pointed out, the court has authority to compensate Committee members but is not obligated do so. See note 19, *supra.* Additionally, we may judicially note that in the relative handful of cases brought to the court in the past on petitions for civil contempt, we apparently have not been asked to compensate, and have not compensated, the Committee's counsel; nor have attorney's fees been ordered—or, to our knowledge, asked to be ordered—to be paid by the contemnor to the CUPL. In this respect as in others, Banks's case is *sui generis:* the CUPL's request for fees stemmed both from the flagrancy of his contempt for the past injunction and from his proclivity to compound the court proceedings—each time requiring a response from the Committee—resulting in a record that Judge Levie measured "perhaps ... in yards." By contrast, any perceived incentive in the run of contempt cases for the court or its designated judge to shift attorney's fees to the contemnor is, we think, negligible to non-existent.

Furthermore, although Banks's case is remarkable because of the size of the at-

---

**20.** Indeed, the CUPL, in petitioning for civil contempt, was a step removed from the role it performs in initiating "an original proceeding before the Court of Appeals for violation of ... Rule 49." D.C.App. R. 49(e)(1)(A). In seeking a contempt order for noncompliance with the 1987 injunction, the CUPL more resembled any citizen aggrieved by Banks's

continued unauthorized practice, such as a licensed practitioner competing to represent the same class of clients, and thus entitled to seek enforcement of a court order through contempt. Strictly speaking, therefore, any issue of the propriety of an award of fees to CUPL members for work done in Rule 49(e)(1)(A) proceedings is not before us.

torney's fees awarded (approximately $64,000.00 in the aggregate), that sum remains a negligible portion of the court's total budget and so fails to create "a realistic possibility that the [court's] judgment will be distorted" by a desire to shift its own (discretionary) financial burden to the shoulders of the contemnor. *Marshall,* 446 U.S. at 250, 100 S.Ct. 1610.

All told, we discern no conflict of interest or appearance thereof sufficient to prohibit an award of attorney's fees to the CUPL in the circumstances of this case.

*Affirmed.*