**In re Dennis P. SOBIN, Appellant.**

No. 05–CT–522.

District of Columbia Court of Appeals.

Submitted Feb. 13, 2007.

Decided Oct. 18, 2007.

Donna L. Biderman, was on the brief for appellant.

Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, Rosalyn Calbert Groce, Deputy Solicitor General, and Janice Y. Shepard, Assistant Attorney General, were on the brief for appellee.

Before WASHINGTON, Chief Judge, FARRELL, Associate Judge, and SCHWELB, Senior Judge.

WASHINGTON, Chief Judge:

Dennis P. Sobin ("appellant"), appeals the trial court's judgment finding him guilty of criminal contempt for violating the terms of a Civil Protection Order ("CPO") which prohibited any contact with his son, Darrin Sobin. We affirm.

## I.

This case stems from a long-standing, contentious family situation. For a number of years, appellant sought to re-establish regular contact with his son. For reasons too numerous to recite here, Darrin Sobin did not want any contact with his father. He ultimately sought a CPO from the District of Columbia Superior Court, Domestic Violence Unit. The parties engaged in two mediation sessions to see if they could reach some agreement regarding a future relationship. Mediation failed, and Darrin Sobin again sought entry of the CPO.

On March 9, 2004, the Superior Court granted Darrin Sobin's request for a CPO against appellant. The CPO stated in relevant part that appellant:

> shall not contact [Darrin Sobin] in any manner, including but not limited to: by telephone, in writing, in any manner, either directly or indirectly through a third party. No e-mail, electronic mail, or other communication devices.

Appellant was served with a copy of the CPO. On November 19, 2004, appellant filed a lawsuit [1] against Darrin Sobin regarding an inheritance claim; however, appellant failed to serve the complaint on his son. At a status conference, Marian Riedy represented Darrin Sobin and requested that the court dismiss the case due to appellant's failure to serve Darrin Sobin. The trial court dismissed the case. As the parties left the courtroom, appellant approached Ms. Riedy and asked for her name and business address. In addition, appellant asked Ms. Riedy to tell Darrin Sobin that he would be giving a press conference the following morning and that he wanted his son to attend. Appellant also attempted to give Ms. Riedy a brochure about an organization he was associated with, asking her to deliver it to his son. At the same time, appellant said nothing to Ms. Riedy about the case that had just been dismissed, and Ms. Riedy had not represented Darrin Sobin at all in the CPO proceeding. On November 21, 2004, appellant sent a follow-up e-mail to Ms. Riedy discussing their encounter and the press conference. Appellant testified that he was aware of the CPO when he communicated with Ms. Riedy and he acknowledged that he encountered Ms. Riedy after the court hearing. Appellant

---

1. Previously, in January 2004, appellant had filed a lawsuit against Darrin Sobin concerning an inheritance claim. The Superior Court dismissed the claim for failure to serve the complaint.

had no other contact with his son or any other individual mentioned in the CPO.

The trial court found appellant guilty of criminal contempt because he knowingly and voluntarily asked Darrin Sobin's counsel, Ms. Riedy, to contact his son for him in violation of the CPO.

## II.

Appellant asserts that the evidence was insufficient to support his conviction of criminal contempt. We disagree.

■ This court's standard of review when assessing evidentiary sufficiency is "necessarily deferential," *Fields v. United States*, 793 A.2d 1260, 1264 (D.C.2002), and this court "may not reverse the trial court's findings of a CPO violation unless they are without evidentiary support or plainly wrong." *Ba v. United States*, 809 A.2d 1178, 1182 (D.C.2002) (internal quotation marks and other citation omitted). We "view the evidence in the light most favorable to sustaining the judgment." *Davis v. United States*, 834 A.2d 861, 866 (D.C.2003). However, "[w]hether the acts in which the defendant was found to have engaged constitute criminal contempt ... is a question of law, and we review the trial court's resolution of that question *de novo.*" *Fields, supra*, 793 A.2d at 1264.

■ D.C.Code § 16–1005(f) (2001) provides that a "[v]iolation of any temporary or final [civil protection] order issued under this subchapter ... shall be punishable as contempt." To establish a violation of a CPO, the government must present evidence beyond a reasonable doubt that the defendant engaged in (1) willful disobedience (2) of a protective court order. *Davis, supra*, 834 A.2d at 866. "The of-

fense requires both a contemptuous act and a wrongful state of mind." *Id.* Willful, however, "means, no more than that the person charged with the duty knows what he is doing." *Jones v. Harkness*, 709 A.2d 722, 724 (D.C.1998) (citing *Hager v. District of Columbia Dep't of Consumer & Regulatory Affairs*, 475 A.2d 367, 368 (D.C.1984)) (internal quotation and citation omitted).

■ Applying the foregoing standards to the evidence in this case, we conclude that there was sufficient evidence to support the trial court's finding beyond a reasonable doubt that appellant violated the CPO. The CPO stated that appellant could not initiate contact with Darrin Sobin through a third party. Appellant acknowledged that he was aware of the CPO when he spoke with Ms. Riedy and he had also received a copy of the CPO in court. Thus, appellant was on notice that he could not attempt to contact his son directly or indirectly through a third party. *See Smith v. United States*, 677 A.2d 1022, 1031–32 (D.C.1996).

The trial court found that appellant did not discuss the just dismissed litigation with Darrin Sobin's attorney, Ms. Riedy. The court credited Ms. Riedy's testimony regarding what appellant said to her, finding her to be "very credible." In contrast, the court did not credit appellant's testimony.[2] The court found that there had been no discussion of settlement, of how appellant could serve his son, about the appellant's mother's estate, or any other matters related to the litigation. The court concluded that appellant's comments inviting his son to a press conference "had nothing to do with anything other than his

---

2. Appellant's credibility was further undermined by the consistent testimony of both his son, Darrin Sobin, and a licensed therapist, that during mediation sessions between appel-

lant and his son, the issue of inheritance never came up. Appellant, however, stated that it had.

desire to circumvent this court's order ... by having contact with a third party." Given the record, we cannot disagree with the trial court's findings. *See Ba, supra,* 809 A.2d at 1182. By speaking with Ms. Riedy, a third party, about a matter unrelated to the matter of the lawsuit, appellant violated the CPO.[3]

Appellant contends that his discussion as a *pro se* litigant with his son's attorney was a permissible contact. Appellant's reliance on *Smith, supra,* 677 A.2d at 1032, in support of this contention, however, is misplaced. In *Smith,* this court held that a verbal order to stay away from third parties was neither sufficiently clear nor specific enough to serve as a guide for appellant's conduct. *Id.* at 1031. We agreed with appellant that "any order to stay away from third parties had to be in writing." *Id.* As a result, we concluded that appellant could not reasonably infer from a general oral instruction that she could not have contact with appellee's attorney.[4] *Id. Smith* is readily distinguishable because in this case the CPO was in writing and stated that appellant could not contact his son either directly or indirectly through a third party. Moreover, Ms. Riedy had not been counsel for Darrin Sobin in the CPO proceedings; her representation of him began months later as his counsel in the inheritance litigation. Thus, unlike in *Smith,* the special "context of domestic stay away orders" and the recognized role "of third parties[, particularly attorneys,] in facilitating communication between the principals" during such disputes, *id.* at 1031–32 n. 6, gave appellant no reason to think he could properly con-

tact his son through her, contrary to the ban against direct or indirect contact. As a result, appellant willfully violated the CPO because he was aware of the CPO provision that prevented him from contacting his son through a third party such as his son's attorney. *See Jones, supra,* 709 A.2d at 724 ("[W]illful means no more than that the person charged with the duty knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law.") (internal quotation and citation omitted).

Accordingly, for the foregoing reasons, the appellant's criminal contempt conviction is

*Affirmed.*

SCHWELB, Senior Judge, concurring:

Notwithstanding a highly professional brief filed by Dennis Sobin's counsel on her client's behalf, I am constrained to agree with the court that the prosecution proved each element of criminal contempt, and that Dennis Sobin was therefore properly convicted. To quote Dennis Sobin's brief on appeal, "the only action that could ever remotely be considered an attempt to contact Darrin Sobin *was when Dennis Sobin told Ms. Riedy of the press interview and asked her to let Darrin Sobin know.*" (Emphasis added.) The CPO which Dennis Sobin was found guilty of violating prohibited him from contacting his son "... in any manner, *either directly or through a third party.*" (Emphasis added.)

Here, the father tried to invite the son to the father's press conference by tender-

---

**3.** By contrast, had appellant attempted to communicate with his son, through Ms. Riedy, about the pending lawsuit, we would likely have been unable to find a clear violation of the CPO. Nonetheless, under these circumstances where the contact was unrelat-

ed to the present litigation, appellant's conviction must be sustained.

**4.** The trial judge's instruction stated in part: "[y]ou're to have no contact whatsoever verbal, by letter or directing others to provide contact." *Smith, supra,* 677 A.2d at 1031.

ing the invitation through a third party, namely, Ms. Riedy. His conduct cannot be reconciled with the plain terms of CPO. Thus, although one might reasonably view the violation as comparatively trivial and the sentence—incarceration for 180 days, of which 90 days were suspended—as being a little on the severe side for an invitation to a press conference, communicated to the son's attorney rather than directly to the son, I perceive no legitimate basis for reversal, and I join in the judgment and the opinion of the court.

I write separately, however, because I believe that our opinion resolves only the issue before us, and that it does not stand for the proposition that *every* conceivable contact initiated by Dennis Sobin *vis-a-vis* his son would necessarily constitute a criminal contempt. The CPO is broad, but there are limits to literalism. Suppose that Dennis Sobin learned that Darrin Sobin's favorite aunt was on her deathbed and that she had only a few days to live. Surely it would not be a crime for Darrin Sobin's father to ask somebody to let Darrin Sobin know of his aunt's plight, so that Darrin Sobin could say good-bye. Even if it were Dennis Sobin himself who was facing imminent death, I question whether an attempt on his part to inform his son and grandchildren that his life was about to end could reasonably be deemed to be criminal or a violation of the CPO. I am sure that other such examples come readily to the reader's mind.

Although any harm done by the invitation in the situation before us strikes me as rather modest, this case does not present the kind of compelling humanitarian consideration that could arise in situations like those that I have described, nor is the result irrational to the point of absurdity. I therefore join my colleagues in affirming the judgment. I do so, however, on the understanding that our opinion does not purport to decide, on the basis of a literal reading of the CPO, the outcome of hypothetical cases in which resort to criminal contempt proceedings would be inhumane and absurd. It should be remembered that "[the] words of our opinions are to be read in light of the facts of the order under discussion.... General expressions transposed to other facts are often misleading." *Armour Co. v. Wantock*, 323 U.S. 126, 132–33, 65 S.Ct. 165, 89 L.Ed. 118 (1944); *see also Khiem v. United States*, 612 A.2d 160, 164 (D.C.1992).

This case takes liability for criminal contempt, based on the literal words of the CPO, quite far enough. The court's opinion should not be construed as support for taking the concept any further.